**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Charles JONES, Defendant–**
**Appellant.**

**No. 99–10462.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 2000

Filed Nov. 2, 2000

Mark J. Reichel, Assistant Federal Defender, Sacramento, California, for the defendant-appellant.

Norman Y. Wong, Assistant United States Attorney, Sacramento, California for the plaintiff-appellee.

Before: ALDISERT*, GRABER and FISHER, Circuit Judges.

ALDISERT, Circuit Judge:

Section 922(g)(8) of Title 18 makes it illegal for persons to possess a firearm if they are subject to a domestic violence protection order.[1] The primary issue in this appeal by Michael Charles Jones is whether the district court erred in denying Appellant's motion to dismiss count one of the indictment charging him with violating § 922(g)(8). He raises a number of constitutional challenges to the section based on due process, the Commerce Clause and the Tenth Amendment.

The jury convicted Appellant on count one. It also convicted Appellant on count two, being a felon in possession of firearms, 18 U.S.C. § 922(g)(1); count three, making false statements on firearms records, 18 U.S.C. § 922(a)(6); and count four, making a false statement on a firearm license renewal application, 18 U.S.C. § 924(a)(1)(A). In addition to his constitutional contentions, Appellant argues that there is insufficient evidence to support his conviction, specifically contending that the government failed to prove beyond a reasonable doubt that he was not entrapped as to counts one and two and that there was insufficient evidence to establish venue as to count four.

He challenges also the sentence imposed, alleging that the district court erred in increasing his sentence because he had a prior conviction in the California state courts for the crime of stalking. This state conviction was viewed by the district court as a crime of violence, thereby meriting a two-level increase under sentencing guidelines.

We hold that § 922(g)(8) is constitutional and that there was sufficient evidence to support Appellant's conviction on all counts. After the sentencing in the district court, however, California state courts interpreted the state's stalking statute in a different manner than the district court had. This new interpretation requires

---

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. § 922(g)(8) provides in relevant part: "It shall be unlawful for any person . . .
 (8) who is subject to a court order that . . .
 (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner and child . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

that the sentence be vacated and remanded to the district court for re-sentencing.

## I.

Appellant, a federally licensed firearms dealer, lived in Sacramento with his girlfriend, Christine Bush, prior to 1997. After the relationship ended in late 1996, he began harassing Bush. In early March 1997, he struck her and fractured her nose. On March 26, 1997, Bush obtained a restraining order from the Superior Court of California, County of Sacramento, following a hearing at which Appellant was present. The order prohibited Appellant from contacting, attacking, threatening or coming within 100 yards of Bush's residence. The order was to expire on March 26, 2000.

In late April or early May 1997, Appellant filed an application to renew his firearms license with the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms ("ATF"). The license renewal application asked whether the applicant was subject to a domestic abuse restraining order such as the one Bush had obtained. Although he knew he was subject to such an order, Appellant denied this on the renewal application.[2] He continued to stalk and harass Bush in violation of the restraining order and, upon her complaint, a state arrest warrant for felony stalking was issued. Appellant was arrested in Kansas on the warrant in June 1997 and returned to California where he pleaded no contest to the stalking charge. He was given a suspended sentence and placed on five years' formal probation with the condition that he serve 90 days in jail.

Through a regular compliance check of Best's Collateral, a pawn shop in Marysville, California, ATF special agents learned that Appellant had pawned firearms there. In May 1998, Special Agent Russell Barlowe, a criminal investigator,

contacted the pawn shop to verify that Appellant had, in fact, pawned firearms at that shop. Barlowe testified that he intended to collect the guns because he believed that they were evidence of a criminal violation. During that conversation, Mel King, the manager of the pawn shop, discussed his concerns about the financial loss the pawn shop would suffer if the government confiscated the guns at that time. After his conversation with Agent Barlowe, King spoke with the vice president of Best Collateral and they decided not to renew Appellants' loans because they did not want to lose the money the pawn shop had invested in the guns. At Best Collateral, the normal loan period is four months. At the end of four months, the person who pawned the item must redeem it and pay off the loan or renew the loan on the item. King testified that the pawn shop has the right to "call the loan," which means that the shop decides not to renew the loan for another four month period.

King asked the ATF to allow the pawn shop to carry out its decision not to renew the loans so that the shop could try to get its money back. The government agreed not to confiscate the firearms at that time, and King agreed to notify the ATF if Appellant decided to come in to redeem the firearms.

Toward the end of the current loan period, Appellant contacted King regarding renewing his loans. King told him that the pawn shop was not going to renew his loans because they were getting out of the firearm business. King testified that he said this because he did not want to prolong the transaction. Appellant asked for an extension of time to pick up the guns, and King gave it to him because the pawn shop wanted to recoup its money. King then informed the ATF that Appellant was scheduled to come in on August 15, 1998.

2. Renewal Questionnaire, Question Number 10: "Are you subject to a court order restraining you from harassing, stalking or threatening an intimate partner or child of such partner?" Appellant checked the box that said "No."

On that date, Appellant came to the pawn shop and was given two forms to fill out prior to possessing the guns. On both forms, he falsely stated that he was not a felon and that he was not subject to a domestic violence restraining order.[3] He received the guns, left the pawn shop and was arrested outside the pawn shop by ATF agents.

On August 28, 1998, a grand jury indicted Appellant on four counts: (1) for possessing firearms while subject to a restraining order, (2) for being a felon in possession of firearms, (3) for making false statements on firearms records, and (4) for making a false statement on a firearms license renewal application. On April 29, 1999, following a four-day trial, a jury convicted him on all four counts of the indictment and he was duly sentenced.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291. The appeal was timely filed under Rule 4(b), Federal Rules of Appellate Procedure.

## II.

■ Appellant first contends that the district court erred in denying his motion to dismiss count one of the indictment because § 922(g)(8) violates the Constitution in three respects: it offends the due process clause, exceeds Congress' authority under the Commerce Clause and infringes on rights reserved to the states under the Tenth Amendment. We review de novo the district court's determination of the constitutionality of a federal statute. *Crawford v. Lungren,* 96 F.3d 380, 384 (9th Cir.1996).

### A.

■ The statute at issue in this case prohibits a person who is subject to a domestic violence restraining order from possessing a firearm. 18 U.S.C. § 922(g)(8). Appellant originally argued that § 922(g)(8) was an obscure statute that punished the generally lawful practice of possessing firearms and therefore should allow for an "ignorance of the law" defense to avoid a conflict with the due process clause. However, at oral argument, Appellant conceded that this court's recent decision in *United States v. Kafka,* 222 F.3d 1129 (9th Cir.2000), controls and therefore disposes of his due process argument.

In *Kafka,* the defendant, who was convicted under § 922(g)(8), raised the same due process challenge. This court noted that "the issuance of the [restraining] order itself should have alerted Kafka to the possibility of other limitations on his conduct, including the prohibition on his possession of firearms." *Id.* at 1132–1133. The court distinguished § 922(g)(8) from the situation in *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), in which the Court required notice of the statute when a person could be penalized for the passive omission of failing to register with the municipality. *Kafka,* 222 F.3d at 1130–1131. Accordingly, this court already has held that § 922(g)(8) is constitutionally valid because it does not "fall within *Lambert*'s exception to the traditional rule that ignorance of the law is no defense." *Id.* at 1133.

### B.

■ Under § 922(g)(8), it is unlawful for a prohibited person to "possess in or af-

---

**3.** Testimony of Mel King:
"Q: As to question 8 C, how did Mr. Jones answer that question as to whether or not he had been convicted by any court … for which a judge could impose a sentence of more than a year?
A: He said no.
Q: Is that true on both forms?
A: Yes …
Q: What is question 8 J on the form?

A: Are you subject to a court order restraining you from harassing, stalking or threatening to intimidate a partner or child of such partner …
Q: How did Mr. Jones answer that question?
A: He said no.
Q: And did he answer that way on both forms?
A: Yes, he did."

fecting interstate commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(8). Appellant contends that this provision violates the Commerce Clause based on the reasoning in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez*, the Court invalidated former § 922(q) (the Gun–Free School Zones Act) on the ground that it lacked a jurisdictional element that would ensure that the firearm possession in question affects interstate commerce.

The *Lopez* analogy is not well taken because, unlike the Gun–Free School Zones Act, the statute before us contains a jurisdictional element explicitly requiring a nexus between the possession of firearms and interstate commerce. This court's post-*Lopez* decisions have upheld the constitutionality of a similar statutory provision forbidding the possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). *United States v. Polanco*, 93 F.3d 555 (9th Cir.1996); *United States v. Hanna*, 55 F.3d 1456 (9th Cir.1995). As we recognized in *Polanco*, the jurisdictional element "insures, on a case-by-case basis, that a defendant's actions implicate interstate commerce to a constitutionally adequate degree." 93 F.3d at 563. Because § 922(g)(8) shares the same jurisdictional element as § 922(g)(1), we apply our analysis in *Polanco* and *Hanna* to reject the Commerce Clause attack on this statute. Moreover, every Court of Appeals that has considered this question has concluded that § 922(g)(8) is a valid exercise of Congress' power under the Commerce Clause. *United States v. Baker*, 197 F.3d 211 (6th Cir.1999); *United States v. Bostic*, 168 F.3d 718 (4th Cir.1999); *United States v. Cunningham*, 161 F.3d 1343 (11th Cir. 1998); *United States v. Wilson*, 159 F.3d 280 (7th Cir.1998); *United States v. Pierson*, 139 F.3d 501 (5th Cir.1998).

### C.

Nevertheless, Appellant argues that the Court's recent decisions in *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), and *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), support his contention that the statute is unconstitutional under the Commerce Clause because it does not meet the *Lopez* standard. We disagree.

In *Lopez*, the Court recognized three separate bases for jurisdiction under the Commerce Clause: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "activities having a substantial relation to interstate commerce, ... i.e., those activities that substantially affect interstate commerce." 514 U.S. 549, 558–559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *United States v. Pappadopoulos*, 64 F.3d 522, 527 (9th Cir.1995), we observed that § 922(g) can "rationally be seen as regulating the interstate transportation of firearms and ammunition" and so constitutes a valid exercise of Congress' power to regulate activity in the second of these three categories. It can also be seen as falling within the third category, which requires only a minimal nexus that the firearm in question have moved in interstate commerce at some time. *See United States v. Miller*, 105 F.3d 552, 555 (9th Cir.1997) (citing *United States v. Hanna*, 55 F.3d 1456, 1462 (9th Cir.1995)).

Neither *Morrison* nor *Jones* changes this analysis. *Morrison* involved a provision of the Violence Against Women Act that creates a federal cause of action for victims of gender-motivated violence. 120 S.Ct. at 1745. The most important distinction is that, unlike § 922(g)(8), the statute at issue in *Morrison* does not contain an express jurisdictional element that demonstrates the necessary nexus between the statutory provision and interstate commerce. Accordingly, we are not prepared

to say that the teachings of *Morrison* apply to statutes, like § 922(g)(8), that do contain a precise statement of a jurisdictional element.

The second important distinction in comparing these cases is the nature of the subject matter of the statutes involved. Section 922(g)(8) regulates the possession of firearms that travel in interstate commerce and have an effect on interstate commerce. In contrast, the statute at issue in *Morrison* regulates gender-motivated violence, a non-commercial activity that does not meet any of the three separate bases enunciated in *Lopez* for jurisdiction under the Commerce Clause.

In *Jones*, the Court had before it 18 U.S.C. § 844(i), which makes it a crime to "maliciously damag[e] or destro[y], ... by means of fire or an explosive, any building ... used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 120 S.Ct. at 1907. The question for decision was whether the statute covered the arson of an owner-occupied private residence. *Id.* at 1908. The Court held that the statute does not apply to a private residence not "currently used in commerce or in an activity affecting commerce." *Id.* at 1912. Section 922(g)(8) regulates guns, products that are manufactured in and travel through interstate commerce. This can be distinguished from the non-economic activity of committing arson against a private residence in *Jones*, committing violence against women in *Morrison* and possessing a firearm within 1000 feet of a school in *Lopez.* Accordingly, we hold that § 922(g)(8) does not offend the Commerce Clause.

### D.

■ We have held that if Congress acts under one of its enumerated powers, there can be no violation of the Tenth Amendment. *United States v. Mussari*, 95 F.3d 787, 791 (9th Cir.1996) (finding no Tenth Amendment violation when Congress had authority to enact the Child Support Recovery Act under the Commerce Clause). Relying on *Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), Appellant contends that the Residual Powers Clause of the Tenth Amendment provides an independent basis for striking down § 922(g)(8) regardless of whether Congress acted within the scope of its powers under the Commerce Clause. *Printz* involved a federal statute that attempted to require state officers to enforce a federal gun control program. *Id.* at 904–905, 117 S.Ct. 2365. The Court struck down the statute on the ground that Congress cannot conscript state officers to enact or enforce a federal regulatory program. *Id.* at 935, 117 S.Ct. 2365. The statute at issue here is a federal criminal statute to be implemented by federal authorities; it does not attempt to force the states or state officers to enact or enforce any federal regulation.

■ We reject also Appellant's contention that the statute infringes on a state's ability to regulate domestic relations, an area traditionally left to the states. Section 922(g)(8) does not attempt to regulate domestic relations; it simply accepts the validity of domestic abuse restraining orders that have been issued under state law.

We therefore conclude that the statute neither violates the Tenth Amendment nor impinges upon the sovereignty of the states.

### III.

■ Appellant's argument on insufficiency of the evidence rests on the contentions that venue was not established as to count four and that the government failed to prove beyond a reasonable doubt that Appellant was not entrapped as to counts one and two. In reviewing the sufficiency of evidence underlying a conviction, the standard is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt. *United States v. Bancalari,* 110 F.3d 1425, 1428 (9th Cir.1997).

## A.

■ Appellant was charged in count four with making a false statement on his firearm license renewal application, in violation of 18 U.S.C. § 924(a)(1)(A). The government bears the burden of proving venue by a preponderance of the evidence. *United States v. Angotti,* 105 F.3d 539, 541 (9th Cir.1997). "[D]irect proof of venue is not necessary 'where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid.'" *United States v. Childs,* 5 F.3d 1328, 1332 (9th Cir.1993) (citations omitted).

■ Appellant's argument relies on the evidence of the location to which he sent the application—Atlanta, Georgia. The crime of making a false statement is a continuing offense that may be prosecuted where the crime was begun, continued or completed. *Angotti,* 105 F.3d at 542–543. In this case, venue was proper in the Eastern District of California because a preponderance of the evidence proved that Appellant began the crime there by preparing the renewal application in Sacramento, California. Specifically, the renewal application showed that the ATF sent the application to Appellant's business address in Sacramento, California. In addition, he completed the application by writing that his current address was in Sacramento and that his current telephone number was a Sacramento number. Finally, he wrote a Sacramento address on the money order he sent in with his application. This evidence raises a sufficient inference that the preparation of the form occurred in Sacramento and therefore venue was proper in the Eastern District of California on count four.

## B.

■ Appellant next contends that he was entrapped on count one, possessing firearms while subject to a restraining order, and on count two, being a felon in possession of firearms. The defense of entrapment contains two elements: (1) government inducement of the crime, and (2) the absence of predisposition on the part of the defendant. *United States v. Davis,* 36 F.3d 1424, 1430 (9th Cir.1994). The district court correctly instructed the jury that the government has the burden of proving beyond a reasonable doubt that Appellant was not entrapped.

■ Generally, whether a defendant was entrapped is a question for the jury.[4] *Id.* at 1430 (citing *Sherman v. United States,* 356 U.S. 369, 377, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958)). Where, as here, the entrapment defense is submitted to the jury, an appellate court should not disturb the jury's finding unless, viewing the evidence in the light most favorable to the government, no reasonable jury could have concluded that the government had disproved either of the elements of the entrapment defense. *United States v. Poehlman,* 217 F.3d 692, 698 (9th Cir. 2000). In this case, there was sufficient evidence for a reasonable jury to find either that Appellant was not induced by government agents or that he was predisposed to commit the crimes charged.[5]

---

**4.** Although we are not certain that Appellant explicitly raised the issue of entrapment as a matter of law in his brief, we quickly dispose of this contention. To establish entrapment as a matter of law, the defendant must point to *undisputed* evidence of entrapment. *See United States v. Smith,* 802 F.2d 1119, 1124 (9th Cir.1986). There is evidence in the record that Appellant was not induced by government agents and that he was in fact pre-disposed to commit the crimes for which he was charged. Even Appellant conceded at oral argument that differing inferences could be drawn from the evidence as to whether he was predisposed to possess the firearms. Because the evidence of entrapment is in dispute, there cannot be entrapment as a matter of law.

**5.** The jury convicted Appellant, which means that either it did not find that the government

### 1.

 Inducement must be provided by someone acting for the government. *See Davis*, 36 F.3d at 1430. A person is a government agent "when the government authorizes, directs and supervises that person's activities and is aware of those activities." Ninth Cir. Model Jury Instr. Crim. § 6.3 (2000); *United States v. Fontenot*, 14 F.3d 1364, 1369 (9th Cir.1994); *see also Sanchez v. United States*, 50 F.3d 1448, 1452 (9th Cir.1995). Factors in determining whether a person is a government agent include "the nature of that person's relationship with the government, the purposes for which it was understood that person might act on behalf of the government, the instructions given to that person about the nature and extent of permissible activities, and what the government knew about those activities and permitted or used." Ninth Cir. Model Jury Instr. Crim § 6.3.

A reasonable jury could have found that Mel King, Manager of Best's Collateral, was not acting as a government agent. King, not the government, made the decision to "call the loan"; in other words, he made the decision not to renew Appellant's loans. The ATF agents were prepared to seize the firearms at the pawn shop and, had they done so, Best's Collateral would have suffered financial loss. King asked the agents to delay seizure in order for him to inform Appellant that the pawn shop was not going to renew his loans for another four-month period. King did not act on behalf of the government, although he did cooperate with the ATF in carrying out the call on Appellant's loans. King's actions were at all times motivated by the financial interests of the pawn shop. He said that he would notify the ATF if and when Appellant planned to redeem his guns. Alternatively, if Appellant did not appear, King testified that he was not going to call Appellant and try to arrange another time for him to come in; the pawn shop would simply default the loans and take possession of the guns. The government did nothing to change the nature of the contract that Best Collateral had with Appellant. In sum, although the government agreed to accommodate King's decision to "call the loans," a reasonable jury could have found that the agents did not "authorize, direct or supervise" his activities.

 Even assuming that a jury could have found that King was a government agent, a reasonable jury could nonetheless have found that King did not induce Appellant to possess any weapons. "Inducement has been defined as 'repeated and persistent solicitation' or 'persuasion' which overcomes the defendant's reluctance. Mere suggestions or the offering of an opportunity to commit a crime is not conduct amounting to inducement." *United States v. Simas*, 937 F.2d 459, 462 (9th Cir.1991) (citations omitted). King's conduct does not amount to inducement. King testified that at Best Collateral, the normal loan period is four months. He testified that the pawn shop has the right not to renew the loan at the end of the four month period. King did not shorten the time of Appellant's existing loan contract; he merely decided not to enter into a new loan contract with Appellant. King did not use any persuasive or coercive tactics to try to induce Appellant to possess the guns; he simply presented him with the opportunity to possess the guns. There is sufficient evidence to support a

induced him, or did find that he was predisposed to commit the crime. Without a special verdict, we do not know which is the case so we discuss both elements. We reiterate the following from Judge Kozinski's opinion in *Poehlman:*

> Because the determination of whether a defendant is entrapped is often confusing and difficult, we encourage the district courts to use special verdict forms that query jurors as to the elements of the entrapment defense. Not only does this ease the process of appellate review, it encourages juries to focus their deliberations on the elements of the defense.

217 F.3d at 698 n. 7.

finding that the government did not induce Appellant to commit the crimes charged.

### 2.

 Even if Appellant could establish inducement, the government has proved beyond a reasonable doubt that he was disposed to commit the crime. In evaluating predisposition, we consider five factors: (1) the character and reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement. *United States v. Tucker*, 133 F.3d 1208, 1217 (9th Cir.1998) (citations omitted).

In *Tucker*, this court reiterated the following: "Although none of these five factors controls, the most important is the defendant's reluctance to engage in criminal activity." 133 F.3d at 1217 (quoting *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir.1994)). In the case at bar the evidence does not support Appellant's contention that he was reluctant, in the sense of being unwilling or adverse to committing a crime. Appellant argued in his brief and at oral argument that he was reluctant to possess the guns. In so arguing, he conflates a reluctance to possess guns with a reluctance to commit a crime. Here, there is a distinction with a difference. This is graphically demonstrated in his further contention that there was undisputed evidence that "these guns were worth a lot of money, and [he] could not redeem them because he was always short on cash." A reasonable inference could be drawn by the jury that the reluctance was predicated on his lack of money to pay for the firearms, not because he was reluctant to commit an illegal act.

Once Appellant arrived at the pawn shop on August 15, he had an opportunity to avoid possessing the guns. Before redeeming the guns, he was required to fill out standard ATF forms that explicitly asked whether he was subject to a restraining order and whether he had been convicted of a felony. At that point he was put on notice that possession of firearms by him was illegal but, instead of responding truthfully on the forms, he chose to subject himself to additional criminal liability in order to possess the firearms. On each of the forms he falsely stated that he was not subject to a domestic violence restraining order and that he was not a felon. *See supra* note 3. If he had answered the questions truthfully, the pawn shop would not have permitted him to redeem the firearms because under the law he was not entitled to possess them. If Appellant was reluctant to illegally possess the firearms, he had ample opportunity to avoid possessing them.

The Court has held that "where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition." *Jacobson v. United States*, 503 U.S. 540, 549–550, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). Appellant contacted King about renewing his loans, and King presented him with the option of redeeming his firearms for cash or forfeiting them pursuant to the terms of the loan contract. Appellant chose to pay off the loan and possess the guns rather than forfeit them to the pawn shop. As the government discussed at oral argument, this is similar to a government agent offering a drug dealer the opportunity to sell drugs. The drug dealer has a choice; he may avoid selling the drugs and lose the money, or sell the drugs and commit the crime. If the drug dealer sells the drugs, he can be arrested immediately by the government agent. It is well settled that this practice is legal. *Id.* Similarly, Appellant was presented with an economic choice, and he chose to commit the crime and possess the guns.

Other factors reveal that Appellant was predisposed to commit a crime. In March

1997, he was placed under a domestic violence restraining order, a court proceeding that antedated his June 1997 stalking conviction. In April 1997, he falsely stated on a firearm license renewal form that he was not subject to a domestic violence restraining order. Appellant argued that the record would show that all the firearms at issue in this case were pawned in January of 1996, when he was not disabled from possessing firearms. This statement is not supported by the record. He possessed one of the firearms on June 14, 1997, prior to pawning it at Best's Collateral, a possession that occurred three months after Appellant was subject to the domestic violence restraining order.

Viewing the evidence in the light most favorable to the government, there was sufficient evidence for the jury to have found beyond a reasonable doubt that Appellant was not entrapped.

## IV.

 Finally, Appellant challenges the district court's interpretation of the sentencing guidelines. Specifically, he challenges the district court's decision to set the base offense level at 20 pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(a)(4)(A). The district court reasoned that his conviction for stalking under California Penal Code § 646.9 constituted a crime of violence under the definition set forth in U.S.S.G. § 4B1.2 and therefore merited an increase pursuant to U.S.S.G. § 2K2.1(a)(4)(A). The district court's interpretation of the sentencing guidelines is reviewed de novo. *United States v. Garcia*, 135 F.3d 667, 669 (9th Cir.1998).

██ Section 2K2.1(a)(4)(A) states that the base offense level is 20 if "the defendant had one prior felony conviction of

either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). A crime of violence is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use or threatened use of physical force against the person of another, or (2) ... involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a)(1). To determine whether a prior conviction is a crime of violence, a district court must look to the language of the statute and the conduct charged rather than the actual underlying conduct.[6] *United States v. Bailey*, 139 F.3d 667, 668 (9th Cir.1998).

Appellant argued at sentencing that the element of "threat to safety" under the California stalking statute does not necessarily involve a threat of physical force under U.S.S.G. § 4B1.2(a)(1). The district court disagreed. The court interpreted the stalking statute as being reasonably understood as referring to physical safety and therefore that the statute fell within the definition of a crime of violence under the sentencing guidelines.

After Appellant's sentencing, the California Court of Appeal interpreted the stalking statute at issue here. In *People v. Borrelli*, 77 Cal.App.4th 703, 719, 91 Cal.Rptr.2d 851 (2000), the defendant asked the court to limit the term "safety" to mean only physical safety. The court rejected his claim, noting that the legislature "intentionally deleted the 'reasonable fear of death or great bodily injury' language and replaced it with the 'threat in reasonable fear for his or her safety' language." *Id.* at 719–20, 91 Cal.Rptr.2d 851. Because the California Court of Appeal has now held that the state stalking stat-

---

6. California Penal Code § 646.9(a) states:
 Any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his

 or her immediate family, is guilty of the crime of stalking, punishable ... by imprisonment in the state prison.
 The conduct charged tracked the language of the statute.

ute is not limited to physical injury on its face, we must vacate the sentence and remand to permit the district court to reconsider sentencing in light of *Borrelli*.

The district court made no factual findings with respect to a reduction based on U.S.S.G. § 2K2.1(b)(2) because it rejected Appellant's objection to the base offense level. Because we are vacating and remanding, at the re-sentencing proceedings, he will bear the burden of proving that § 2K2.1(b)(2) applies. *See United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir. 1990).

We have considered all arguments advanced by the parties and conclude that further discussion is not necessary.[7]

Conviction AFFIRMED; sentence VACATED and REMANDED.

7. Appellant also raised the following contentions: (1) the district court erred in denying his motion to suppress post-arrest statements because of *Miranda* violations; (2) he was prejudiced by the district court's refusal to sever counts for trial; (3) the district court erred by refusing to give jury instructions regarding knowledge of the law and materiality under the relevant statutes; (4) the district court erred in finding that Appellant was not entitled to a jury instruction on entrapment as to count three (making a false statement on a firearms record); (5) the evidence presented at trial was insufficient to support his conviction because Appellant was not subject to a lawful restraining order, because the government did not disprove entrapment as to count three (if this court held that he was entitled to an entrapment instruction on this count) and because there was insufficient evidence as to venue on all four counts; (6) the district court erred at sentencing in denying a sentencing adjustment for acceptance of responsibility and finding that Appellant was not entrapped for sentencing purposes. We have considered these arguments and are satisfied that no reversible error occurred.