FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

LATASHA LORRAINE ARNT, a/k/a
Latasha Lorraine Simpson and
Latasha L. Cummings,
              *Defendant-Appellant.*

Nos. 05-50124
        05-50292

D.C. No.
CR-03-00523-PA

OPINION

Appeals from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
November 13, 2006—Pasadena, California

Filed January 25, 2007

Before: Betty B. Fletcher, Ferdinand F. Fernandez, and
Susan P. Graber, Circuit Judges.

Opinion by Judge B. Fletcher

**COUNSEL**

Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Jerry A. Behnke, Assistant United States Attorney, Riverside, California, for the plaintiff-appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

A jury convicted LaTasha Lorraine Arnt of committing voluntary manslaughter while accompanying the Armed Forces of the United States in Turkey, in violation of 18 U.S.C. §§ 1112(a), 3261(a). The court sentenced her to eight years in prison and ordered her to pay restitution to the victim's family.

On appeal, Arnt raises several challenges to her conviction and sentence. She asserts that the indictment failed to allege an essential element and challenges several aspects of her conviction, including the sufficiency of the evidence and the

court's refusal to give an involuntary manslaughter instruction. Finally, she argues that her sentence is unreasonable and contends that the restitution order is illegal because it defines "victim" too broadly.

We reject her challenge to the indictment, which was sufficient to identify the jurisdictional basis of the prosecution. Similarly, we reject her challenge to the sufficiency of the evidence, which provided an adequate basis to establish, beyond a reasonable doubt, that Arnt was accompanying the Armed Forces outside the United States at the time of her offense. We agree with Arnt, however, that the district court committed reversible error in refusing to give an involuntary manslaughter instruction.[1]

## BACKGROUND

LaTasha Arnt fatally stabbed her husband, Staff Sergeant Matthias Anthony Arnt, III, during a domestic dispute on Incirlik Air Base, Turkey, where SSgt. Arnt served as a member of the security forces unit. The government charged Arnt with murder, asserting jurisdiction under the Military Extraterritorial Jurisdiction Act of 2000 (MEJA), 18 U.S.C. §§ 3261-3267. After a jury deadlocked over whether to convict, the court declared a mistrial. She was re-tried; a second jury acquitted her of murder but convicted her of the lesser-included offense of voluntary manslaughter.

Arnt filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

---

[1]Because we reverse the conviction on the jury instruction issue, we do not reach Arnt's other challenges to her conviction, not mentioned herein, nor do we address her challenges to her sentence or the restitution order.

## DISCUSSION

## Sufficiency of the Indictment

[1] Congress enacted MEJA in response to a jurisdictional gap created by host nations' reluctance to prosecute crimes against Americans committed by civilians accompanying the Armed Forces outside the United States. H.R. Rep. No. 106-778(I) (2000), 2000 WL 1008725, at *5. To close this gap, MEJA creates federal jurisdiction over those who commit felonies while "accompanying the Armed Forces outside the United States." 18 U.S.C. § 3261(a)(1).[2] A person is "accompanying the Armed Forces outside the United States," if she satisfies three requirements: she must be "(A) [a] dependent of . . . a member of the Armed Forces; (B) residing with such member . . . outside the United States; and (C) not a national of or ordinarily resident in the host nation." 18 U.S.C. § 3267(2).[3]

---

[2]Section 3261(a)(1) reads, in pertinent part:

Whoever engages in conduct outside the United States that would constitute an offense punishable by imprisonment for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States . . . while . . . accompanying the Armed Forces outside the United States . . . shall be punished as provided for that offense.

[3]Section 3267(2) reads in full:

As used in this chapter:

. . . .

(2) The term "accompanying the Armed Forces outside the United States" means—

(A) A dependent of—-

(i) a member of the Armed Forces;

(ii) a civilian employee of the Department of Defense (including a nonappropriated fund instrumentality of the Department); or

(iii) a Department of Defense contractor (including a subcontractor at any tier) or an employee of a Department of Defense contractor (including a subcontractor at any tier);

(B) residing with such member, civilian employee, contractor, or contractor employee outside the United States; and

(C) not a national of or ordinarily resident in the host nation.

Arnt challenges the indictment's failure to allege that she resided with SSgt. Arnt. She contends that § 3267(2)(B)'s residency requirement is an essential element both to confer federal jurisdiction under MEJA and to fulfill the indictment's purpose of giving her notice of the elements of the crime with which she was charged.

Because Arnt first challenged her indictment after trial, we review the indictment for plain error, *see United States v. Velasco-Medina*, 305 F.3d 839, 846 (9th Cir. 2002), "liberally constru[ing] the indictment in favor of validity." *United States v. Chesney*, 10 F.3d 641, 643 (9th Cir. 1993). The key question as to the sufficiency of an indictment "is whether an error or omission in an indictment worked to the prejudice of the accused. . . . Absent such prejudice, the conviction may not be reversed for any omission in the indictment." *Velasco-Medina,* 305 F.3d at 847 (internal quotation marks omitted).

**[2]** Reviewing for plain error, we find this indictment adequate. A defendant is not prejudiced where her counsel has notice of the omitted element and the jury is properly instructed regarding the missing element. *Id.* Arnt's counsel had notice of the residency requirement from the statute itself, specifically cited in the indictment and, at least two months before trial, from the first trial's jury instructions and the government's trial memorandum, both of which inform as to the § 3267 residency requirement. The jury in the second trial was properly instructed on the residency requirement, both at the beginning of trial and in the jury instructions. With notice of the omitted element and proper jury instructions, Arnt suffered no prejudice from the indictment's failure to allege residence.

**[3]** Arnt challenges the indictment on the alternative grounds that its failure to assert residence stripped the district court of jurisdiction to hear the case. This is essentially a restatement of her sufficiency argument couched in jurisdictional language. In general, "defects in an indictment do not

deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Although an indictment challenged before trial may be held insufficient for failure to assert an essential jurisdictional element, *see United States v. Perlaza*, 439 F.3d 1149, 1167 (9th Cir. 2006), for the reasons stated above, this tardily challenged indictment was adequate.

## Sufficiency of the Evidence

Arnt argues that the evidence presented at trial was insufficient to establish, beyond a reasonable doubt, her residence in Turkey as required by § 3267(2)(B) to establish jurisdiction pursuant to MEJA. We review the sufficiency of evidence in a criminal trial de novo, asking whether, after "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shipsey*, 363 F.3d 962, 971 n.8 (9th Cir. 2004) (internal quotation marks omitted).

Keeping this standard in mind, we turn to the evidence of residency in the record. The parties stipulated, and read into the record, several facts bearing on residence: that Arnt's "permanent home of record" was in Riverside, California; that SSgt. and Mrs. Arnt transferred to Incirlik Air Base August 1, 2001; that Arnt resided with her grandmother in Riverside, California, from early March 2003 to May 23, 2003; and that Arnt and her infant daughter returned to Incirlik Air Base, Turkey on May 24, 2003. Arnt testified that she left for the United States in December 2002 due to an imminent civilian evacuation of Incirlik and that she returned to Turkey once the evacuation was lifted. Several witnesses referred to the residence on the base as "the Arnts' house." Arnt herself referred to it as "our house." Arnt acted as though the house at the base were her own, cleaning it upon her arrival from the United States and storing important papers there.

**[4]** On the basis of these facts, a rational jury could conclude beyond a reasonable doubt that Mrs. Arnt resided with SSgt. Arnt at Incirlik and, thus, the evidence was sufficient to support the verdict.

### Involuntary Manslaughter Instruction

The district court instructed the jury on murder and voluntary manslaughter but refused to instruct on the lesser-included offense of involuntary manslaughter. Arnt asserts that this constituted reversible error because the jury was thereby precluded from convicting her of involuntary manslaughter, even if the jurors believed the evidence supporting her theory of accidental death.

**[5]** A defendant is entitled to an instruction on a lesser-included offense if the law and evidence satisfy a two-part test: 1) "the elements of the lesser offense are a subset of the elements of the charged offense," *Schmuck v. United States*, 489 U.S. 705, 716 (1989); and 2) "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit [her] of the greater," *Keeble v. United States*, 412 U.S. 205, 208 (1973). We review the first step de novo and the second step for abuse of discretion. *United States v. Naghani*, 361 F.3d 1255, 1262 (9th Cir. 2004).

**[6]** There is an apparent split in Ninth Circuit authority regarding the standard of review for instructions on lesser-included offenses. *Compare id. with United States v. Pierre*, 254 F.3d 872, 875 (9th Cir. 2001) (reviewing de novo). We write to make clear that there is no actual split. The first step in determining whether a lesser-included offense instruction should be given asks us to consider a legal question: Is the offense for which the instruction is sought a lesser-included offense of the charged offense? *See Schmuck*, 489 U.S. at 716. Therefore, the first step is subject to de novo review. The second step is a factual inquiry: Does the record contain evidence that would support conviction of the lesser offense? *See Kee-*

*ble*, 412 U.S. at 208. The trial judge obviously is better situated than we are to make this factual determination; therefore, we review the second step for abuse of discretion. *See United States v. Wagner*, 834 F.2d 1474, 1487 (9th Cir. 1987).

Our statement in *Pierre* that de novo review applies to a district court's refusal to give a lesser-included offense instruction is not to the contrary. *See Pierre*, 254 F.3d at 875. In *Pierre*, we engaged in only the first step of the lesser-included offense inquiry, i.e., determining whether assault by striking, beating, or wounding is a lesser-included offense of the charged crime of assault with a dangerous weapon. As that is a legal question, de novo review was properly applied.

**[7]** With the standard of review established, we turn to the first step of the lesser-included offense instruction inquiry. It is well established that involuntary manslaughter is a lesser-included offense of murder. *See United States v. Anderson*, 201 F.3d 1145, 1148 (9th Cir. 2000) ("Voluntary and involuntary manslaughter are lesser included offenses of murder."); *United States v. Skinner*, 667 F.2d 1306, 1309 n.1 (9th Cir. 1982) (per curiam) ("[I]nvoluntary manslaughter is a lesser-included offense of murder and voluntary manslaughter."). The government does not argue otherwise.

**[8]** It is the second step that is at issue here: Is there evidence of accident that could provide the predicate for an involuntary manslaughter instruction? To acquit of the greater offenses and to convict of the lesser, in this case, would require the jury to find that Arnt killed her husband unintentionally. *See United States v. Paul*, 37 F.3d 496, 499 (9th Cir. 1994) ("If the defendant killed with the mental state required for murder (intent to kill or recklessness with extreme disregard for human life), but the killing occurred in the 'heat of passion' caused by adequate provocation, then the defendant is guilty of voluntary manslaughter. . . . By contrast, the absence of malice in involuntary manslaughter arises not because of provocation induced passion, but rather because

the offender's mental state is not sufficiently culpable to meet the traditional malice requirements.") (internal citations and quotation marks omitted). The evidence in support of unintentional death comes mainly from Arnt's testimony and that of the defense forensic pathologist.

First we consider Arnt's testimony. She testified that she and SSgt. Arnt fought on the night of his death over whether she would leave him because of his womanizing and drinking; that the fight became physical; that, after wrenching free from her husband's choke-hold, she ran to the kitchen, grabbed a knife, and told her husband to leave the house; that SSgt. Arnt responded by telling her to say her prayers as he crouched as if to punch her; and that the next thing she remembered was pulling the knife from his chest. She testified that she was not aiming the knife anywhere, that she "didn't want to fight him; I just wanted him to leave," and, in response to cross-examination, said she "didn't want to kill him." Arnt also testified of her attempt to save her husband's life by calling the base law enforcement office to demand an ambulance, and telling him, "[j]ust to stay with me, not to move" while waiting for the ambulance to arrive.

The record contained evidence of the extreme stress under which these two were operating. Mrs. Arnt testified that, two days before the stabbing, she had traveled from the United States, a 24-hour journey, with a baby and with little sleep. Moreover, she had not had much sleep after her arrival in Turkey. A number of witnesses testified that SSgt. Arnt became extremely drunk at a party on the night of his death. His supervising officer testified that SSgt. Arnt was slurring his speech and spilling drinks; his hosts testified that they called a cab to take him home because he was too drunk to remain at the party. According to the prosecution's toxicologist, SSgt. Arnt's blood alcohol level at the time of his death was 0.26, more than three times the legal limit for driving in most states. In short, it is eminently understandable that, given their condi-

tion, the Arnts would have had an irrational fight that may have included poor physical control and slow reaction times.

Arnt's testimony is supported by that of the defense pathologist, Dr. Herrmann, who testified that the wound could have come largely from the victim's movements, rather than from the defendant's. According to Dr. Herrmann, the trajectory and depth of the wound was consistent with SSgt. Arnt bending deeply forward at his waist and falling into the knife as he attempted to punch Mrs. Arnt.

**[9]** Admittedly, the evidence supporting unintentional death is inconsistent with other evidence.[4] However, if there is some evidence to support the jury instruction, it is the jury's province to determine which evidence it believed most accurately reflected the events surrounding the stabbing. *See United States v. Sotelo-Murillo*, 887 F.2d 176, 182 (9th Cir. 1989) ("The weight and credibility of the conflicting testimony are issues properly resolved by the jury."). Setting aside the contrary evidence, we are left with Mrs. Arnt's testimony that she did not intend to kill her husband, her lack of aim of the knife, the defense pathologist's hypothesis that the wound could have come from SSgt. Arnt's falling on the knife, SSgt. Arnt's drunkenness, and Mrs. Arnt's fatigue. A jury rationally could have found from this evidence that Mrs. Arnt lacked the intent to kill SSgt. Arnt and that his death was the tragic, and accidental, result of SSgt. Arnt's falling onto the knife as Mrs. Arnt waved it menacingly in an effort to make him leave her alone.

---

[4]Dr. Herrmann's testimony was contradicted by the prosecution forensic pathologist, who testified that the angle of the blow was most consistent with an overhead, downward thrust. Although Mrs. Arnt testified that she did not intend to kill her husband, she never explicitly claimed that the stabbing was accidental, only testifying that she could not remember the exact moment when she stabbed SSgt. Arnt and, alternatively, that she acted in self-defense.

**[10]** The integrity of the jury's fact-finding role undergirds our requirement that a lesser-included offense instruction be given when supported by law and the evidence. In this case, a couple fought and a young serviceman died. The jury might have been unwilling to acquit his killer of all crimes and, even if the jurors believed the evidence pointing to accidental death, without an involuntary manslaughter instruction, they might have convicted of voluntary manslaughter as a compromise between convicting of murder and acquitting entirely. *See Keeble*, 412 U.S. at 212-13 ("Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction."). We therefore reverse and grant a new trial.

## CONCLUSION

The indictment conferred jurisdiction and adequately informed the defendant of the charges against her. The evidence of residence was sufficient to support the conviction. We find that there was sufficient evidence at trial to support an involuntary manslaughter instruction. Accordingly, we hold that the district court erred in refusing to give an involuntary manslaughter instruction. We **VACATE** the conviction and **REMAND** for a new trial.