**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-10250 |
| Plaintiff - Appellee, | D.C. No. 2:06-cr-00035-MCE-1 |
| v. | |
| ERIC MCDAVID, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted August 9, 2010
San Francisco, California

Before: GRABER, CALLAHAN, and BEA, Circuit Judges.

A jury convicted Eric McDavid of conspiring to bomb one or more targets,

including a federal facility for tree genetics, a federal dam and fish hatchery, and

cell phone towers, in violation of 18 U.S.C. § 844(n). McDavid appeals his

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

conviction and his sentence of 235 months' imprisonment on eight grounds. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm.[1]

## 1. Jury Instruction Errors

Primarily, McDavid asserts that he was entrapped by Anna, an undercover government agent, and that the district court committed reversible error in instructing the jury on his entrapment defense. During its deliberations, the jury expressed particular confusion over whether the appropriate time frame for assessing entrapment was in August 2004, when McDavid first met Anna, or in June 2005, when McDavid and Anna first discussed the bombing plan. Among other questions about entrapment, the jury asked "Was Anna considered a government agent in Aug. 2004? If not, when did she become one?" The district court orally responded "Yes," meaning that Anna was considered an agent in August 2004. The court later provided the jury with a typed copy of its response that mistakenly stated "No" in answer to the same question.

The court's "No" response could have been interpreted as (1) a clerical mistake, given the court's prior oral "Yes" response and the fact that the court neglected to answer the second part of the question as to when Anna became an

---

[1] Because the parties are familiar with the facts, we repeat them here only as necessary to the disposition of the case.

agent; (2) a partial response indicating that Anna was not considered an agent in August 2004, but leaving unanswered when Anna became an agent; or (3) a complete response indicating that Anna was not an agent in August 2004 and never became an agent. McDavid contends that the jury's interpretation was the last, and thus the "No" response effectively eliminated his entrapment defense.

We determine that the jury did not interpret the typed response as indicating that Anna was never an agent. First, as the district court noted when it denied McDavid's motion for a new trial, the jurors would have asked a follow-up question for clarification if the incorrect typed response confused them. Indeed, it would be completely inconsistent for the jury to have thought that the incorrect response meant that Anna was never an agent. The jury would have had to disregard an overwhelming amount of evidence at trial showing that Anna was recruited by the FBI, was instructed by them at every step of the way, had her car wired, arranged for the wired safe house, worried about her cover being blown, was paid for her undercover work, and talked openly at trial about her undercover role. Further, the jury would have had to disregard the court's prior correct oral response that Anna was an agent in August 2004 and the instructions they received about entrapment. Moreover, while the prosecution and defense disputed the proper time frame for entrapment in their closing arguments, neither contended that

3                                                                                      08-10250

Anna was not an agent and both sides agreed that the jury could consider whether Anna entrapped McDavid after June 2005. Viewing the incorrect typed response in the context of the instructions and trial as a whole, we are unpersuaded that the jury was led to believe Anna was *never* an agent, although the jury may have been confused as to *when* she became an agent.[2]

To the extent that the typed response confused the jury as to when to consider Anna an agent for purposes of entrapment, any error was harmless because a rational jury would have rejected the entrapment defense even if the typed response had correctly reflected that Anna was an agent as of August 2004. *See United States v. Cherer*, 513 F.3d 1150, 1155 (9th Cir. 2008) ("Erroneous jury instructions constitute harmless error if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'"). If a defendant is predisposed to commit a crime, then the defendant cannot be considered entrapped, even if he was induced. *United States v. Jones*, 231 F.3d 508, 518 (9th Cir. 2000). The five factors we use to determine predisposition indicate that McDavid was predisposed.

---

[2] In determining the effect of the incorrect response, we may not consider the post-verdict juror declarations relied upon by McDavid. Fed. R. Evid. 606(b); *United States v. Span*, 75 F.3d 1383, 1390 n.8 (9th Cir. 1996) (juror statements inadmissible to show jury would have acquitted if properly instructed).

The first factor for predisposition is the defendant's character and reputation. *Id*. While the jury heard testimony from McDavid's sister and friend about McDavid's peaceful and gentle nature, the testimony was overwhelmed by more specific evidence that McDavid had become radicalized, believed that nonviolent protests were ineffective, and was undaunted by the possibility of accidental deaths from his actions. The second factor is whether the government suggested the crime. *Id*. Anna and the co-conspirators testified that McDavid initiated the bombing campaign and invited them to join. The third factor is whether there was a profit motive. *Id*. McDavid seemed motivated by a strongly held anarchic ideology, which is arguably a stronger indicator of predisposition than a profit motive.

The fourth and most important factor is whether the defendant showed any reluctance. *Id.* The evidence shows that McDavid was an active participant, if not the leader, in targeting the Institute of Forest Genetics ("IFG"), conducting reconnaissance, and attempting to construct a bomb. At trial, co-conspirator Zachary Jenson testified that McDavid "seemed most like the brains" of the operation because he "was coming up with most of the ideas."

The final factor for predisposition is the nature of the inducement. *Id.* McDavid contends that part of Anna's inducement was to string him along

romantically, similar to the facts in *United States v. Poehlman*, 217 F.3d 692, 702 (9th Cir. 2000). This case is distinguishable from *Poehlman* because there is no evidence that Anna initiated the idea of the illegal conduct or that McDavid was reluctant to engage in it. *See id.* at 704 (noting that the agent repeatedly suggested the illegal activity, the defendant showed no interest prior to the suggestions, and the defendant initially resisted).

Anna's role in supplying means for the conspiracy did not entitle McDavid to a jury instruction on his "wherewithal" to commit the crime without Anna. In *Poehlman*, we described predisposition as "the defendant's willingness to commit the offense *prior* to being contacted by government agents, coupled with the wherewithal to do so[,]" *id.* at 698, but our decisions before and after *Poehlman* have not included wherewithal as a factor for predisposition. *See, e.g., United States v. Thickstun*, 110 F.3d 1394, 1397-98 (9th Cir. 1997) (rejecting wherewithal argument); *Jones*, 231 F.3d at 518 (listing five-factor test for predisposition, which does not include wherewithal). Even if a wherewithal instruction is available, the court did not err in not giving such an instruction because there was ample evidence that the group could have committed the crime without Anna, even if it would have taken more time or thriftiness.

08-10250

McDavid's other challenges to the jury instructions are unpersuasive, as well. McDavid contends that the district court erred by defining June 2005 as the relevant time frame for the jury to decide whether he was predisposed. Even if we accepted McDavid's contention, the error would be harmless. The evidence from August 2004 forward still demonstrates that McDavid was predisposed. Separately, it was not in error for the district court to answer the jury's questions about the time frame for predisposition without consulting the defense because the court simply reiterated the jury instructions it had already discussed with counsel.

Finally, McDavid contends that the district court erred in refusing to give an instruction that adequately defined inducement. McDavid, however, does not allege how the model instruction given by the court was inadequate to cover his entrapment defense, and, at trial, failed to proffer a separate inducement instruction. Accordingly, McDavid's argument is unpersuasive. *See United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990) (failure to instruct on defense theory is harmless if other instructions adequately cover proposed instructions).

## 2. Entrapment as a Matter of Law

To prove that he was entrapped as a matter of law, McDavid must show that, "viewing the evidence in the light most favorable to the government, no reasonable jury could have found in favor of the government as to inducement or lack of

predisposition." *Poehlman*, 217 F.3d at 698.  Here, the evidence shows McDavid was predisposed, and thus he was not entrapped.

**3. Sufficiency of the Evidence**

McDavid contends that there was insufficient evidence to show that he and the others agreed to at least one of the targets listed in the indictment and to use explosives.  To the contrary, the evidence showed that McDavid suggested targeting the IFG, and the group discussed and researched the IFG extensively. McDavid also initiated the idea of using explosives, and the group discussed bomb types, bought materials, and attempted to make an explosive.  Thus, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that McDavid was guilty of conspiring to use explosives against one or more of the targets in the indictment, particularly the IFG.  *See United States v. Everett*, 692 F.2d 596, 601 (9th Cir. 1982) (reviewing sufficiency of evidence to support conspiracy conviction).

**4. Lesser Included Offense**

McDavid contends that he was entitled to an instruction on conspiracy against the United States pursuant to 18 U.S.C. § 371, as a lesser included offense of § 844(n).  He was entitled to such an instruction only if the evidence would permit a rational jury to find him guilty of the lesser included offense, § 371, and

acquit him of the greater, § 844(n). *See United States v. Arnt*, 474 F.3d 1159, 1163 (9th Cir. 2007). Here, a rational jury could not have done so because it would have had to find all of the elements necessary for a conviction under § 844(n) in order to convict McDavid under § 371. Section 371 requires a conspiracy to commit an *offense against the United States*. The only type of offense against the United States described in the indictment and at trial was the group's plan to use bombs against the federal targets. Thus, a rational jury would have had to find that McDavid conspired to bomb federal targets—a violation of § 844(n)—in order to find him guilty of conspiring to commit an offense against the United States for purposes of § 371. McDavid was not entitled to an instruction under § 371.

### 5. Constructive Amendment or Fatal Variance

McDavid asserts there was constructive amendment of the indictment or fatal variance because the government failed to prove that he and the others agreed to at least one of the targets listed in the indictment, including the IFG. This argument fails because we have determined there was sufficient evidence to support the finding that the group agreed to at least one of the targets.

### 6. Denial of Motions to Suppress and Dismiss

McDavid contends that the warrantless audio-video surveillance recordings from the safe house should have been suppressed under the Fourth Amendment

because he was living in the house and had a reasonable privacy expectation based on his relationship with Anna. This argument fails because he and the others were at the safe house to plan and implement the bombing campaign and bore the risk that Anna, who arranged for the safe house, was an informant. *See United States v. Shryock*, 342 F.3d 948, 978 (9th Cir. 2003) (concluding that warrantless video surveillance of mafia meetings in hotel rooms rented by an informant did not violate defendant's objectively reasonable privacy interests). McDavid also claims that the government taped conversations while Anna was not in the room; however, there is no indication that any such evidence was introduced at trial or reflected in witness testimony. Accordingly, the court did not err in denying McDavid's motion to suppress.

McDavid also contends that the indictment should have been dismissed based on outrageous conduct by the government. We review de novo whether McDavid has met the "'extremely high standard'" of proving "that the government's conduct was 'so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process.'" *United States v. Edmonds*, 103 F.3d 822, 825, 826 (9th Cir. 1996) (citation omitted). We have already determined that Anna's actions did not amount to entrapment. Accordingly, her actions are insufficient to meet the higher standard for proving outrageous government

conduct. *See United States v. Citro*, 842 F.2d 1149, 1152-53 (9th Cir. 1988) (explaining that the defense of outrageous government conduct is similar to entrapment but a much higher standard). Further, McDavid contends that it was outrageous conduct for Anna to ask him about a friend of his who was prosecuted for burning buildings in the name of the Earth Liberation Front, although Anna knew McDavid had been advised by an attorney not to discuss the case. McDavid has not shown how Anna's questions about his friend prejudiced him. *See United States v. Stringer*, 535 F.3d 929, 941 (9th Cir.), *cert. denied*, 129 S. Ct. 662 (2008) (to establish outrageous government conduct based on an intrusion into the attorney client relationship, defendant must show actual and substantial prejudice).

McDavid's remaining challenges to the denial of his motion to dismiss are not meritorious. As noted, the warrantless taping was legal, and McDavid has not argued why it would be outrageous despite being legal. Moreover, the U.S. Attorney's press conferences and resulting media coverage contained fair factual summaries of the indictment. Finally, the U.S. Attorney's statements about defense counsel's involvement in another case and possible conflict of interest were neither inappropriate nor prejudicial given that the same attorney has remained McDavid's counsel throughout, including on appeal.

## 7. Cumulative Error

McDavid asserts as cumulative error that the district court abused its discretion by (1) admitting testimony from Officer Bruce Naliboff regarding "eco terror" groups and the anarchist movement, and (2) admitting bad act and unfavorable character evidence while limiting favorable character evidence to June 2005 forward. Contrary to McDavid's contention, Naliboff's non-scientific testimony was not governed by *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 (1993), and, in any event, *Daubert* does not require an admissibility hearing. *Millenkamp v. Davisco Foods Int'l, Inc.,* 562 F.3d 971, 978-79 (9th Cir. 2009). Additionally, McDavid has failed to indicate how Naliboff's testimony was unfairly prejudicial or how any prejudice outweighed the testimony's probative value. *See United States v. Blitz*, 151 F.3d 1002, 1008-09 (9th Cir. 1998). Moreover, McDavid has not identified bad act or character evidence that was admitted or excluded, and, even if he had, "[o]ne error is not cumulative error." *United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000).

## 8. Sentencing

McDavid asserts that the district court improperly calculated the Sentencing Guidelines range and failed to consider the factors set forth in 18 U.S.C. § 3553(a). Under the Guidelines, the base level for an offense involving arson or explosives

directed at destroying a government or infrastructure facility is 24. U.S.S.G. § 2K1.4(a)(1)(B). Although McDavid argues that the jury did not specifically find that he agreed to the targets or to use explosives, in order to convict McDavid, the jury had to find that he conspired to damage or destroy, by fire or explosive, government property or property used in interstate commerce. *See* 18 U.S.C. § 844(f)(1), (i), (n). Thus, the conviction supports the base level of 24.

Additionally, McDavid contends the terrorism enhancement is inapplicable because the conspirators' intention to affect or retaliate against the government was not established by the evidence. *See* 18 U.S.C. § 2332b(g)(5)(A) (defining crime of terrorism); U.S.S.G. § 3A1.4 (enhancement for crime of terrorism). To the contrary, at sentencing, the district court noted that the group had discussed a number of different ways to disrupt the government and the economy, that the object of the conspiracy was federal facilities, and that McDavid had clearly expressed his goals and objectives in disrupting the government. Viewing the evidence as a whole, these findings supporting the enhancement were not clearly erroneous. *See United States v. Tankersley*, 537 F.3d 1100, 1110 (9th Cir. 2008) (reviewing the district court's findings of fact in support of a sentence for clear error).

08-10250

Finally, the record reflects that the district court adequately considered McDavid's § 3553(a)(2) arguments for a reduced sentence. *Cf. United States v. Carty*, 520 F.3d 984, 992-93 (9th Cir. 2008) (en banc) (although the district court should address defendant's specific § 3553(a) arguments, it is presumed to have considered all the factors and "need not tick off" each one). The district court addressed entrapment, the juror statements, and the probation officer's recommendation. The court concluded that even though McDavid had no criminal history, the nature of the offense was "extremely serious" and overrode evidence of McDavid's peaceful qualities. The district court also considered similarly situated defendants and found that there were comparable, and even substantially longer, sentences. In sum, McDavid fails to show that the sentence was an abuse of discretion. *See id.* at 993 (reviewing sentence for abuse of discretion).

McDavid's conviction and sentence are **AFFIRMED.**