PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

HARRY RONALD SEAY,

      *Defendant-Appellant.*

No. 07-4953

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Terry L. Wooten, District Judge.
(4:06-cr-00084-TLW)

Argued: September 26, 2008

Decided: January 26, 2009

Before WILKINSON, NIEMEYER, and DUNCAN,
Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

## COUNSEL

**ARGUED:** Russell Warren Mace, III, Myrtle Beach, South Carolina, for Appellant. Rose Mary Sheppard Parham, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee. **ON BRIEF:** Kevin F. McDon-

ald, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina; Carrie A. Fisher, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.

## OPINION

NIEMEYER, Circuit Judge:

After pleading guilty to being a felon in possession of a firearm, Harry Ronald Seay was sentenced to 96 months' imprisonment. Challenging his sentence on appeal, Seay contends (1) that his prior felony stalking conviction under North Carolina General Statutes § 14-277.3 (1999) is not a "crime of violence" justifying an enhanced offense level under United States Sentencing Guidelines § 2K2.1; (2) that the district court erred in admitting, during the sentencing proceeding, a threat-assessment report and threat-assessment testimony given by a law enforcement officer; and (3) that the district court abused its discretion in imposing a variance sentence above the advisory range of the Sentencing Guidelines.

For the reasons given herein, we reject each argument and affirm. We hold that felony stalking under North Carolina law is a crime of violence as defined in § 4B1.2(a) of the Sentencing Guidelines. We also conclude that any error that the district court may have committed in admitting the threat-assessment report and testimony at sentencing was harmless because the evidence was cumulative and the district court did not give significant weight to the report and testimony. And finally, we conclude that the district court's variance sentence was not unreasonable.

I

After South Carolina law enforcement officers stopped Harry Seay in September 2005 for speeding, they determined

that he was driving without insurance. The officers searched Seay's vehicle, incident to his arrest, and uncovered a .38 caliber revolver and 50 rounds of ammunition. Seay informed the officers that he was holding the gun and ammunition for a female prostitute.

After being indicted for possession by a felon of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Seay pleaded guilty pursuant to a written plea agreement.

The presentence report prepared for Seay revealed that Seay had prior convictions for making harassing telephone calls to a female in 1997; for misdemeanor stalking involving shining a spotlight into a woman's house in 1998; for destroying his house arrest monitoring system in 1999; for felony stalking in 1999; for misdemeanor assault with a deadly weapon in 2000; and for possession of a firearm by a person having been committed to a mental institution in 2001. The report determined that Seay's 1999 conviction for felony stalking was a "crime of violence" as defined in U.S.S.G. § 4B1.2(a) and that therefore his base offense level was level 20 under U.S.S.G. § 2K2.1(a)(4)(A). The report also recommended that Seay receive a three-level reduction of his offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility, yielding a final offense level of level 17. This offense level, combined with Seay's criminal history category V, subjected Seay to an advisory Sentencing Guidelines range of 46 to 57 months' imprisonment.

Seay filed a motion for a downward departure based on diminished capacity, and he supported his motion with a 1999 psychologist's report, prepared by Dr. John F. Warren, III, which detailed Seay's bizarre stalking practices but also concluded that Seay's condition was "treatable."

After Seay filed his motion, South Carolina Law Enforcement Officer Michael Prodan undertook to prepare a "threat

assessment" of Seay. After reviewing Seay's record, Prodan sought authorization to interview Seay from the Assistant U.S. Attorney and Seay's counsel. As Officer Prodan testified during the sentencing proceeding, counsel for Seay "agreed to this interview . . . . I would not have approached Mr. Seay without the knowledge of [counsel's] permission for the interview." The discussions to obtain permission did not address specifically the purpose of Officer Prodan's interview, but Seay's counsel later stated that he assumed that the interview was in furtherance of Seay's agreement to cooperate. The discussions did, however, indicate that Officer Prodan should also obtain Seay's consent before proceeding with the interview. Thus Officer Prodan asked Seay for permission to talk to him, explaining that "[he] found [Seay] to be a rather interesting individual and that [he] wanted to speak to [Seay] about his offense and what his behaviors were." Seay consented to the interview, which was tape-recorded. Thereafter, the government filed a motion seeking an upward variance "to protect the public from further crimes [by Seay] and to provide [Seay] with appropriate psychological treatment" and attached to the motion a copy of Officer Prodan's threat-assessment report.

At the sentencing hearing, Seay contended that his 1999 conviction for felony stalking under North Carolina law was not a "crime of violence," as defined in U.S.S.G. § 4B1.2(a), and therefore that his offense level should not have been level 20 under U.S.S.G. § 2K2.1(a)(4)(A). He also objected to consideration of Officer Prodan's report and testimony because the interview was conducted in violation of his Fifth and Sixth Amendment rights. Finally, he urged that the court give him a downward departure based on Dr. Warren's 1999 report. At the hearing, the district court received testimony from Officer Prodan, as well as from Seay. The court then adopted the presentence report, including its conclusion that felony stalking in violation of North Carolina law is a crime of violence; denied Seay's motion to suppress Officer Prodan's report and testimony; denied Seay's motion for a downward departure;

and granted the government's motion for an upward variance based on the nature and circumstances of Seay's offense, his history and characteristics, and the need to protect the public from future crimes. The court imposed a five-level upward variance, to level 22, yielding an advisory Guidelines range of 77 to 96 months' imprisonment, and sentenced Seay to 96 months' imprisonment.

From the district court's judgment, dated September 18, 2007, Seay filed this appeal.

## II

Seay contends first that felony stalking, as codified in North Carolina General Statutes § 14-277.3 (1999), is not a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A), as defined in U.S.S.G. § 4B1.2(a), and therefore, the district court erred in setting his base offense level at level 20.

Section 2K2.1(a)(4)(A) of the Sentencing Guidelines fixes a defendant's base offense level at level 20 if the defendant "committed any part of the instant offense subsequent to sustaining one felony conviction of . . . *a crime of violence*," U.S.S.G. § 2K2.1(a)(4)(A) (emphasis added), and a "crime of violence" is defined in U.S.S.G. § 4B1.2(a) as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The commentary to § 4B1.2, which is also authoritative, *see Stinson v. United States*, 508 U.S. 36, 38 (1993); *United States v. Payton*, 28 F.3d 17, 19 (4th Cir. 1994), provides an expanded list of crimes that are crimes of violence, including "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2, cmt. 1.

In determining whether a conviction qualifies as a crime of violence under the Sentencing Guidelines, we use the "categorical approach." *United States v. Mathias*, 482 F.3d 743, 746 (4th Cir. 2007); *see also Taylor v. United States*, 495 U.S. 575, 600-02 (1990). Under this approach, we consider an offense "generically" — i.e., "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 128 S. Ct. 1581, 1584 (2008) (citing *Taylor*, 495 U.S. at 602). Thus, "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James v. United States*, 127 S. Ct. 1586, 1597 (2007). At bottom, the categorical approach considers a crime as defined by the language of the governing statute and projects the crime's elements to the heartland of factual circumstances criminalized by the statute—the conduct that violates the elements of the statute "in the ordinary case." *Id.*

The statute in question here — N.C. Gen. Stat. § 14-277.3 (1999) — criminalizes stalking. It provides that

> a person commits the offense of stalking if the person willfully on more than one occasion follows or is in the presence of another person without legal purpose and with the intent to cause death or bodily injury or with the intent to cause emotional distress by placing that person in reasonable fear of death or bodily injury.

*Id.* Thus, the statute can be violated with either of two specific intents. It is violated if the defendant has "the intent to cause death or bodily injury" to the victim *or* if the defendant has "the intent to cause emotional distress by placing that person in reasonable fear of death or bodily injury." *Id.* Because the statute criminalizes more than one type of conduct, we may look beyond the statutory language to the actual charging document controlling the defendant's conviction to understand the nature of the offense. *See United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir. 1998). In this case, the indictment charged Seay with "unlawfully, willfully and feloniously . . . on more than one occasion follow[ing] and . . . [being] in the presence of another person . . . without legal purpose and with the intent to cause emotional distress by placing this person in reasonable fear of bodily injury."

Seay argues that the elements of North Carolina's felony stalking "did not require that a defendant make a 'credible threat' to the victim. . . . Conduct intended to cause another reasonable fear of bodily injury does not naturally include the threatened use of physical force," as required by U.S.S.G. § 4B1.2(a)(1). This argument, however, dismisses too quickly the elements of the offense.

First, to be guilty under the statute, Seay's conduct had to be "willful," a requirement that distinguishes his conduct from negligent or accidental conduct. Second, Seay had to be guilty of willfully stalking "on more than one occasion." Third, he had to be found "follow[ing] or [being] in the presence of" his victim, placing his victim "in . . . fear of . . . bodily injury." Fourth, his conduct had to be sufficiently egregious to have placed a "reasonable" person in such fear. *See State v. Ferebee*, 529 S.E.2d 686, 690 (N.C. Ct. App. 2000) (interpreting "reasonable fear" in the 1993 version of the statute and instructing trial courts "to ensure that an objective standard, based on *what frightens an ordinary, prudent person under the same or similar circumstances*, is applied rather than a subjective standard which focuses on the individual victim's

fears and apprehensions" (emphasis added)). Finally, Seay had to have placed his victim in fear of bodily injury "with the intent to cause emotional distress." *See* N.C. Gen. Stat. § 14-277.3 (1999).

It is difficult, if not impossible, to conceive how this conduct could have been carried out without threatening by word or action the use of physical force. The words or actions would have to be willful and intended to cause the victim's distress by *actually* placing her in fear of bodily harm. While Seay suggests that the statute does not require that his threat be credible, he overlooks the statutory requirement that the conduct must *objectively* cause distress by placing the person in fear of bodily harm. *See Ferebee*, 529 S.E.2d at 690. Willfully placing a person in fear of bodily harm is inherently a threat, as a "threat" is defined to be "an expression of an intention to inflict evil, injury, or damage on another." *Webster's Third New International Dictionary* 2382 (1993).

In short, Seay was convicted of conduct that was purposefully carried out with the intended effect of placing a reasonably prudent person in fear of bodily harm. Such conduct "threatens [the] use of physical force against the person of another" by words or actions that place that person in fear of bodily injury and can only be characterized as purposeful, violent, and aggressive. Accordingly, we conclude that Seay was convicted of a crime of violence as defined in U.S.S.G. § 4B1.2(a)(1).

In addition, we conclude that Seay was convicted of a crime of violence as defined in U.S.S.G. § 4B1.2(a)*(2)*, in that it "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." This language of § 4B1.2(a)(2) is substantially similar to the definition of the term "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), that the Supreme Court construed in *Begay*.

In *Begay*, the Court held that the enumerated examples given in § 924(e)(2)(B)(ii) (burglary, arson, extortion, or crimes involving the use of explosives) illustrate the kinds of crimes that fall within the clause's scope and thus limit the catchall clause that includes any other crime that "involves conduct that presents a serious potential risk of physical injury." *See Begay*, 128 S. Ct. at 1586. The Court explained that the inclusion of the examples "indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 1585 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Summarizing crimes that are "similar," the Court said that any other crime covered by § 924(e)(2)(B)(ii) must involve "purposeful, violent, and aggressive conduct." *Id.* at 1586 (internal quotation marks omitted). As § 924(e)(2)(B)(ii)'s language is similar to the language in U.S.S.G. § 4B1.2(a)(2), we conclude that *Begay*'s analysis is applicable to U.S.S.G. § 4B1.2(a)(2).

Because we have concluded that felony stalking as defined by the North Carolina statute is "purposeful, violent, and aggressive," it satisfies the requirements in *Begay*. The North Carolina statute requires that the specified conduct be carried out "willfully." Moreover, the defendant must be in the presence of the victim or following the victim with the victim's knowledge such that the defendant's conduct reasonably places the victim in "fear of . . . bodily injury." Placing a victim in fear of psychological harm is not sufficient for a stalking conviction under North Carolina law. Further, the North Carolina courts have held that an objective standard applies to the "reasonable fear" element, precluding conviction for felony stalking based simply on a victim's incredulous belief that he or she faced bodily harm when a reasonable, objective individual would have suffered no such fear. *See Ferebee*, 529 S.E.2d at 690. Thus, conduct that deliberately places a reasonable person in fear of bodily harm is purposeful and violent, as well as aggressive.

Further, as required by *Begay*, felony stalking in North Carolina is similar "in degree of risk posed" to examples listed in

§ 4B1.2(a)(2), *Begay*, 128 S. Ct. at 1585, namely burglary and extortion. *See James*, 127 S. Ct. at 1592 (holding that attempted burglary is a "violent felony" under the Armed Career Criminal Act because, like the enumerated crimes, it "create[s] significant risks of bodily injury or confrontation that *might result* in bodily injury" (emphasis added)); *Begay*, 128 S. Ct. at 1586 (noting that "extortion" is "'purposely' obtaining property of another through threat of, *e.g.*, inflicting 'bodily injury'" (quoting ALI Model Penal Code § 223.4 (1985))). Indeed, we submit, North Carolina's felony stalking statute presents a greater risk of bodily injury than that presented by extortion, which Congress explicitly listed as a crime of violence.

In sum, because conduct violating North Carolina's felony stalking statute is purposeful, violent, and aggressive, and poses a risk similar to—if not greater than—burglary or extortion, stalking involves conduct that presents a serious potential risk of physical injury to another, and is thus also a crime of violence under U.S.S.G. § 4B1.2(a)(2).

Seay urges that we follow *United States v. Insaulgarat*, 378 F.3d 456, 471 (5th Cir. 2004) (holding that Florida's aggravated stalking law is not a crime of violence), and *United States v. Jones*, 231 F.3d 508, 519-20 (9th Cir. 2000) (holding that California's stalking law may not be a crime of violence and remanding for district court's reconsideration). The difficulty with this position is that the statutes considered in those cases are materially distinguishable from North Carolina's felony stalking statute. The Florida statute considered in *Insaulgarat* criminalizes conduct by a defendant who "knowingly, willfully, maliciously, and repeatedly *follows or harasses* another person." *Insaulgarat*, 378 F.3d at 468 (emphasis added). The *Insaulgarat* court noted that because "there are forms of harassment that . . . do *not* by their nature involve conduct that presents a serious risk of physical harm," violation of the statute cannot categorically be a crime of violence. *Id.* at 470-71. The California stalking statute considered

in *Jones* similarly criminalizes malicious, repeated following or harassing "with the intent to place that person in reasonable fear for his or her safety." *Jones*, 231 F.3d at 519 n.6. Again, the court noted that a "threat to safety" did not necessarily involve the threat of physical force, as required under U.S.S.G. § 4B1.2(a)(1). *See id.* at 519-20.

Unlike the statutes in *Insaulgarat* and *Jones*, the North Carolina felony stalking statute requires more than mere harassment. The defendant must act "with the intent to cause emotional distress *by placing that person in reasonable fear of death or bodily injury*." Thus, we conclude that the district court in this case properly applied U.S.S.G. § 2K2.1(a)(4)(A) to set Seay's base offense level at level 20.

## III

Seay also challenges the district court's admission and consideration of Officer Prodan's risk-assessment report and testimony during sentencing. He contends that the court's consideration of this evidence violated his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to effective assistance of counsel.

We note first that both Seay and Seay's counsel consented to Seay's interview with Officer Prodan. While Seay argues that he did not know that Officer Prodan was conducting a risk assessment, he was advised of the nature of the questions, and he did not object to the interview before or after it was conducted. Seay asserted an objection only when Officer Prodan's report was submitted to support the government's position to increase Seay's sentence.

Seay's counsel asserts, without record support, that he thought the interview was in furtherance of Seay's agreement to cooperate. But he acknowledges that neither the government nor Officer Prodan invoked Seay's agreement to cooper-

ate, and counsel did not inquire or comment as to the purpose of the interview when he consented to it.

We need not resolve these questions, however, because we conclude that any error that may have been committed by the district court in considering Officer Prodan's report or testimony was harmless. The district court concluded independently of the report and testimony that Seay's criminal record of two stalking offenses and two gun offenses, along with related conduct described in Dr. Warren's report, presented a "significant concern" for the court sufficient to support the sentencing enhancement. When the district court explained the role that Officer Prodan's report played in its sentencing considerations, it observed that the report was not significant. The court related that Prodan's report was not "significantly different" from Dr. Warren's report, and because Dr. Warren was a doctor and Officer Prodan was a law enforcement officer, albeit "well-trained" and "well-experienced," Dr. Warren's report deserved greater weight. As the court explained:

> Mr. Prodan is a law enforcement officer. That is what he is. I am not saying that that colored his testimony; but he is a law enforcement officer, well-trained, well-experienced.
>
> But Doctor Warren is a doctor who addresses these kinds of questions. And his report is not a report that allays some of the fears—or some of the concerns, I guess is the right way to describe it—that are raised by what is in that report, in Dr. Warren's report. . . .
>
> Doctor Warren is a professional in terms of psychology, and he is a licensed psychologist with a Ph.D. He is the one that I gave great weight to his report.
>
> I do not want to, again, diminish what Mr. Prodan said[ ], but he has told the same kind of mode. Those

conclusions can be reached with the information that is in Doctor Warren's report.

In short, the district court detailed how Officer Prodan's report and testimony were neither necessary nor material to its conclusion that Seay posed a risk to others. A complete reading of the sentencing transcript reveals that Officer Prodan's report was essentially cumulative and stated the obvious as revealed by Seay's record and Dr. Warren's report.

Seay also contends that the government's use of the Prodan report to enhance his sentence violated the plea agreement reached by the government and Seay. The government argues that Seay had breached the plea agreement through his failure to disclose truthfully how he obtained the firearm. The district court did not make a finding as to whether the government breached the plea agreement in using Officer Prodan's report and testimony.

We need not determine whether Seay breached the plea agreement because we conclude that the interview and its use were not governed by the agreement. Even though the plea agreement required Seay to cooperate in the investigation and prosecution of others and stated that incriminating information provided "as a result of the cooperation . . . [would] not be used against [Seay]," the interview conducted by Officer Prodan was not to investigate and prosecute crimes against others, and no one suggested that it was designed to serve that purpose. To the contrary, Officer Prodan told Seay that he wanted to learn more about the crime at hand and "what [Seay's] behaviors were," making clear that Seay was the sole focus of the interview. In short, Seay has not demonstrated any breach by the government of the plea agreement. Moreover, as already noted, the district court did not consider the report to be significant in fashioning its upward variance.

Finally, Seay argues that the district court should not have even considered Officer Prodan's report and testimony

because Officer Prodan was not an expert under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 571 (1993). Trial courts have significant discretion regarding evidentiary matters in sentencing, and in this case, the district court exercised its discretion in concluding that Officer Prodan was an expert with respect to the opinions he gave and in admitting Prodan's report and testimony. Under our precedents, "in resolving any dispute concerning a factor pertinent to the sentencing decision, 'the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Hernandez-Villanueva*, 473 F.3d 118, 122 (4th Cir. 2007) (quoting U.S.S.G. § 6A1.3(a)). In determining whether to vary from a Guidelines range, a court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence").

The district court did not abuse its discretion in considering Officer Prodan's report and testimony during the course of sentencing. First, the Federal Rules of Evidence, on which *Daubert* is based, do not apply at sentencing. *See Hernandez-Villanueva*, 473 F.3d at 122. In addition, sentencing judges have considerable latitude to consider evidence at sentencing, as authorized by both governing statutes and the Sentencing Guidelines. Finally, as we have already noted, the sentencing judge did not give significant weight to the report or testimony of Officer Prodan, relying principally on Seay's record and the 1999 report of Dr. Warren.

IV

Finally, Seay contends that his sentence of 96 months' imprisonment is unreasonable. He notes that the Sentencing Guidelines called for a sentencing range of 46 to 57 months' imprisonment, and the district court's upward variance of five levels resulted in a Guidelines range of 77 to 96 months' imprisonment, a 68% increase above the original range. Seay argues that the district court inadequately explained its reasoning for sentencing Seay outside the Guidelines range and placed undue weight on 18 U.S.C. § 3553(a)(2)(C), which requires that the district court impose a sentence that "protect[s] the public from further crimes of the defendant."

We review the district court's sentence for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 128 S. Ct. 586 (2007). Under *Gall*, we must first "ensure that the district court committed no significant procedural error." *Id.* at 597. Then we must "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* When reviewing sentences under this standard, we have recognized that the sentence imposed "may not be the only reasonable sentence," but it must be "*a* reasonable sentence." *United States v. Evans*, 526 F.3d 155, 166 (4th Cir. 2008). *Gall* specifically directs that "any reasonable sentence be upheld." *Id.*

In this case, there was no procedural error, and the district court properly calculated the Guidelines range. The court allowed both parties to present evidence during the sentencing proceedings, considered the § 3553(a) factors, and extensively explained its reasoning for the variance. The court explained that it based its variance on § 3553(a)(1), the "nature and circumstances of the offense and the history and characteristics of the defendant," and § 3553(a)(2)(C), "the need for the sentence imposed . . . to protect the public from further crimes

of the defendant." The court stated that additional measures should be taken to protect the public from Seay because he was likely to reoffend. The court observed that Seay had become increasingly dangerous over the years, progressing from possessing a knife to possessing a gun in connection with his stalking practices. Further, Seay's prior detention for possessing a firearm did not deter him from resuming criminal conduct upon his release.

We cannot conclude that on this record, the district court's 96-month sentence was unreasonable in light of the factors on which it relied.

The judgment of the district court is accordingly

*AFFIRMED*.