**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JAMES JESSE CLAY,

*Defendant-Appellant.*

No. 09-4572

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(1:08-cr-00123-LHT-1)

Argued: September 22, 2010

Decided: December 8, 2010

Before AGEE, Circuit Judge, HAMILTON, Senior Circuit
Judge, and James C. DEVER III, United States District
Judge for the Eastern District of North Carolina,
sitting by designation.

Vacated and remanded by published opinion. Senior Judge
Hamilton wrote the opinion, in which Judge Agee and Judge
Dever joined.

## COUNSEL

**ARGUED**: Matthew Segal, FEDERAL DEFENDERS OF
WESTERN NORTH CAROLINA, INC., Asheville, North

Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Edward R. Ryan, United States Attorney, Charlotte, North Carolina, for Appellee.

**OPINION**

HAMILTON, Senior Circuit Judge:

On February 5, 2009, James Clay (Clay) pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Thereafter, the district court sentenced him to sixty months' imprisonment. In calculating Clay's advisory sentencing range under the United States Sentencing Guidelines (Guidelines or USSG), the district court counted Clay's prior conviction for the offense of felony escape under Georgia law, *see* Ga. Code § 16-10-52(a), as a predicate crime of violence for purposes of setting Clay's base offense level at 20, pursuant to USSG § 2K2.1(a)(4)(A).

On appeal, Clay challenges his sentence as procedurally unreasonable, *inter alia*, on the ground that the district court erred in calculating his advisory sentencing range under the Guidelines by erroneously counting his conviction for the offense of felony escape under Georgia law as a predicate crime of violence under USSG § 2K2.1(a)(4)(A). We agree. Accordingly, we vacate Clay's sentence and remand for resentencing in accordance with this opinion.

I.

USSG § 2K2.1 is the Guidelines section applicable to calculate the advisory sentencing range under the Guidelines for

a defendant convicted of a § 922(g) offense. Of particular relevance on appeal, USSG § 2K2.1(a)(4)(A) provides for a base offense level of 20, "if . . . the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence . . . ." *Id.* Application Note 1 of the Commentary to USSG § 2K2.1 provides: "For purposes of this guideline: . . . 'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." USSG § 2K2.1, comment. (n.1). USSG § 4B1.2(a), in turn, defines the term "'crime of violence'" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, **or otherwise involves conduct that presents a serious potential risk of physical injury to another.**

*Id.* The language highlighted in bold is referred to in the relevant jurisprudence as "the Otherwise Clause."

Below, the Presentence Report (PSR) determined that Clay had committed his § 922(g) offense subsequent to sustaining one felony conviction for a crime of violence as the term "crime of violence" is found in USSG § 2K2.1(a)(4)(A), and therefore, recommended that the district court set Clay's base offense level at 20. The PSR identified Clay's 2003 conviction for felony escape under Georgia Code § 16-10-52(a) as the crime of violence. The PSR then reduced Clay's base offense level by 3 levels for acceptance of responsibility, *see* USSG § 3E1.1(a)-(b), resulting in a total offense level of 17. The PSR determined Clay's criminal history category to be

VI. Based upon a total offense level of 17 and a criminal history category of VI, the PSR reported Clay's advisory sentencing range under the Guidelines as 51 to 63 months' imprisonment.

In the first of his two objections to the PSR, Clay objected to the PSR's recommendation to set his base offense level at 20. According to Clay, his felony escape offense did not qualify as a "crime of violence" as that term is found in USSG § 2K2.1(a)(4)(A), because "this is a walk away from a nonsecure facility." (J.A. 39) (sentencing hearing). The government directly disputed Clay's characterization of his felony escape offense as a walk away escape from a unsecured facility on the basis that Clay had also pled guilty to the offense of interference with government property, *see* Ga. Code Ann. § 16-7-24(a), which involved Clay damaging leg irons belonging to the Gainesville State Diversion Center and the State of Georgia, on the same day that he committed his felony escape offense.

In support of its position, the government submitted a copy of the two-page charging document (the Charging Document). The second page of this document set forth the totality of the allegations against Clay with respect to his felony escape offense and his interference with government property offense. Additionally, the government submitted Clay's petition to enter a guilty plea to these offenses and the respective criminal judgments (the Guilty Plea/Judgment Documents).

With respect to Clay's felony escape offense, the Charging Document alleged:

> I, JASON J. DEAL, District Attorney of the Northeastern Judicial Circuit of Georgia, on behalf of the people of the State of Georgia, charge and accuse **JAMES JESSE CLAY** with the offense of **ESCAPE (FELONY)** for that the said accused in the County and State aforesaid, on the **twentieth day**

**of September, 2002,** did unlawfully, having been charged with a felony and having been sentenced under the First Offender Act but prior to adjudication of guilt, escape from a place of lawful custody and confinement: to wit, the Gainesville State Diversion Center, contrary to the laws of this State, the good order, peace and dignity thereof.

(J.A. 169). Clay pled guilty to this charge. The corresponding criminal judgment described the offense only as "Escape." (J.A. 172).

With respect to Clay's interference with government property offense, the Charging Document alleged that, on September 20, 2002, Clay "did unlawfully damage government property, to-wit: leg irons, the property of Gainesville State Diversion Center and the State of Georgia . . . ." (J.A. 169). The criminal judgment for this offense described it only as "Interference with Government Property." (J.A. 173). Clay's petition to enter a guilty plea offered no details regarding either offense. According to the government, Clay's conviction for interference with government property established that, at the time he committed his felony escape "he was shackled and in leg irons," (J.A. 51) (sentencing hearing), and thus, "was not in a walk away type camp," *id.* at 50.

In Clay's second objection to the PSR, he contended that if his first objection is sustained, his base offense level would decrease to 14, pursuant to USSG § 2K2.1(a)(6), and he would then be eligible to decrease his offense level to 6, pursuant to USSG § 2K2.1(b)(2), because he possessed the shotgun found under his bed, which was the subject of his § 922(g) offense, solely for lawful sporting purposes. According to Clay, he was entitled to the lawful sporting purposes reduction, because although he did not have a hunting license, his intent was to use the shotgun to hunt with his grandparents. As proof of his intent, Clay pointed to a statement by his landlord set forth in the PSR that Clay had asked her for per-

mission to hunt on the rented property and a statement by his grandmother set forth in the PSR that the shotgun belonged to Clay's grandfather, her husband, and they planned to go hunting with Clay during their upcoming Thanksgiving visit with him. The crux of the government's response was that Clay failed to carry his burden of proving that he possessed the shotgun solely for lawful sporting purposes, because he did not possess a valid hunting license in either North Carolina or Georgia and, at the time he possessed the shotgun at issue, rabbit hunting season was not open in North Carolina.

At Clay's sentencing hearing, the district court heard argument from both sides with respect to Clay's two objections to the PSR. At the conclusion of such hearing, the district court overruled both objections and adopted the PSR "to be correct as written." (J.A. 53). Thus, the district court calculated Clay's advisory sentencing range under the Guidelines as 51 to 63 months' imprisonment.

In overruling Clay's first objection, the district court read the Charging Document as establishing that Clay was shackled in leg irons during the commission of his felony escape, which circumstance indicated to the district court "that it was not simply a walk away type of confinement at the time of the escape." (J.A. 53). Accordingly, in calculating Clay's sentencing range, the district court set his base offense level at 20, pursuant to USSG § 2K2.1(a)(4)(A).

In initially overruling Clay's objection to the PSR's failure to give him a lawful sporting purposes reduction, the district court stated during the sentencing hearing:

> Two reasons, it is necessary to hunt—to legally hunt in the State of Georgia or surrounding states, to possess a valid hunting license.
>
> And second, as a felon, he would not be entitled to possess the firearm, and thus, it would convinc-

> ingly appear that the defendant was not legally pos-
> sessing a firearm for the lawful purpose of hunting,
> for which he had no license, by his own admission.

(J.A. 53-54). At a later time during this same sentencing hear-ing, the government submitted the document signed by Clay in April 2002, acknowledging that he was prohibited by fed-eral law from possessing firearms. The district court then told Clay that it did not understand how he could come into court and suggest that he possessed the shotgun for hunting when in 2002 he signed a statement acknowledging that he could no longer possess a firearm. Clay responded that the Guidelines provide that a felon in possession of a firearm is eligible for the lawful sporting purposes reduction. The district court reit-erated that it did not understand how Clay could argue that he possessed it for hunting purposes, when he was not allowed to have a gun. The district court then immediately proceeded to pronounce sentence on Clay, sentencing him to 60 months' imprisonment and 3 years of supervised release. This timely appeal challenging Clay's sentence followed. Notably, in addition to the regular appellate briefs to be submitted on appeal, upon our order, the parties submitted (approximately two weeks prior to oral argument) supplemental briefs addressing the impact of our recent decision in *United States v. Bethea*, 603 F.3d 254 (4th Cir. 2010), on the present appeal.

## II.

We review Clay's sentence for reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007). In so reviewing, we must first determine whether the district court committed significant procedural error in sentencing Clay, such that his sentence is procedur-ally unreasonable. *Id.* at 51. Improper calculation of a defen-dant's advisory sentencing range under the Guidelines constitutes significant procedural error. *Id.*; *see also United States v. Chacon*, 533 F.3d 250, 253 (4th Cir. 2008); *United States v. Diaz-Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008).

In his first claim of significant procedural error, Clay contends the district court erred in counting his offense for felony escape under Georgia law as a crime of violence for purposes of setting his base offense level at 20, pursuant to USSG § 2K2.1(a)(4)(A). In addressing this claim of error, the term "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." USSG § 2K2.1, comment. (n.1). As previously set forth, USSG § 4B1.2(a) defines the term "'crime of violence'" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.*

Whether Clay's offense of felony escape under Georgia law qualifies as a crime of violence under USSG § 4B1.2(a) is a question of law that we review *de novo*. *See United States v. Jarmon*, 596 F.3d 228, 230 (4th Cir. 2010). *Cf. Diaz-Ibarra*, 522 F.3d at 347. Pursuant to Georgia Code § 16-10-52(a):

> (a) A person commits the offense of escape when he or she:
>
> (1) Having been convicted of a felony or misdemeanor or of the violation of a municipal ordinance, intentionally escapes from lawful custody or from any place of lawful confinement;

(2) Being in lawful custody or lawful confinement prior to conviction, intentionally escapes from such custody or confinement;

(3) Having been adjudicated of a delinquent or unruly act or a juvenile traffic offense, intentionally escapes from lawful custody or from any place of lawful confinement;

(4) Being in lawful custody or lawful confinement prior to adjudication, intentionally escapes from such custody or confinement; or

(5) Intentionally fails to return as instructed to lawful custody or lawful confinement or to any residential facility operated by the Georgia Department of Corrections after having been released on the condition that he or she will so return; provided, however, such person shall be allowed a grace period of eight hours from the exact time specified for return if such person can prove he or she did not intentionally fail to return.

Ga. Code § 16-10-52(a).

This offense does not have as an element the use, attempted use, or threatened use of physical force against the person of another. Neither does it proscribe burglary of a dwelling, arson, or extortion, or involve the use of explosives. Accordingly, as the government righty concedes, if Clay's offense for felony escape under Georgia law constitutes a crime of violence as defined under USSG § 4B1.2(a), it must fall within the scope of USSG § 4B1.2(a)'s Otherwise Clause. In deciding whether the offense of felony escape under Georgia law falls within the scope of USSG § 4B1.2(a)'s Otherwise Clause, we rely upon precedents evaluating whether an offense constitutes a violent felony under the Armed Career Criminal Act (the ACCA), 18 U.S.C. § 924(e)(2)(B), inter-

changeably with precedents evaluating whether an offense constitutes a crime of violence under USSG § 4B1.2(a). *See Jarmon*, 596 F.3d at 231 n.\*; *United States v. Rivers*, 595 F.3d 558, 560 n.1 (4th Cir. 2010); *United States v. Seay*, 553 F.3d 732, 739 (4th Cir. 2009). We do so because "[t]he ACCA defines 'violent felony' in a manner substantively identical to the definition of a 'crime of violence' in § 4B1.2."[1] *Jarmon*, 596 F.3d at 231 n.\*.

Before addressing the parties' arguments regarding whether Clay's offense for felony escape under Georgia law falls within the scope of USSG § 4B1.2(a)'s Otherwise Clause, we must first set forth the relevant legal landscape, beginning with the Supreme Court's opinion in *Begay v. United States*, 553 U.S. 137 (2008). In *Begay*, the Supreme Court considered whether driving under the influence of alcohol falls within the scope of the ACCA's Otherwise Clause. *Id.* at 1583. In holding that it does not,

> [t]he Court reasoned that Congress included the enumerated offenses of burglary, arson, extortion, and the use of explosives to limit the crimes that the second clause covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves. The Court found that the enumerated felonies typically involve purposeful, violent, and aggressive conduct, and thus distinguished those crimes from offenses, like driving under the influence of alcohol, that impose strict liability,

---

[1]The ACCA defines the term "violent felony" as "any crime punishable by imprisonment for a term exceeding one year," . . . that—

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

criminalizing conduct in respect to which the offender need not have had any criminal intent at all.

*Jarmon*, 596 F.3d at 231 (internal quotation marks, citations, alteration marks, and ellipses omitted).

In deciding whether the offense of felony escape under Georgia law qualifies as a crime of violence under USSG § 4B1.2(a)'s Otherwise Clause, we must first determine which of two, potentially applicable interpretive methods, the categorical approach or the modified categorical approach, is applicable. *Bethea*, 603 F.3d at 256 (ACCA); *United States v. Seay*, 553 F.3d 732, 737 (4th Cir. 2009) (USSG § 4B1.2(a)). "Under th[e] categorical approach, the way in which a particular defendant violated the statute on the particular day in question is irrelevant; the only question is whether the statutory language proscribes conduct that involves violence when the offense is considered generically." *Bethea*, 603 F.3d at 256. The categorical approach is inapplicable, however, if "a statute broadly criminalizes conduct that could be 'generally committed' in multiple ways, some violent and some not . . . ." *Id.*

Under the modified categorical approach, we may consider the charging documents filed in the court of conviction. *Seay*, 553 F.3d at 737 (USSG § 4B1.2(a)) ("Because the statute criminalizes more than one type of conduct, we may look beyond the statutory language to the actual charging document controlling the defendant's conviction to understand the nature of the offense."); *Diaz-Ibarra*, 522 F.3d at 348 (USSG § 2L1.2(b)(1)(A)(ii)) ("Under the modified categorical approach, we determine whether a defendant's specific conduct qualifies as a crime of violence by looking to the terms of the charging document . . . ." (internal quotation marks omitted)). Moreover, applying the modified categorical approach in a guilty-plea situation, such is at issue here, we may consider, as set forth in *Shepard v. United States*, 544 U.S. 13, 26 (2005), "'the terms of a plea agreement,' the

'transcript of colloquy between judge and defendant,' or 'some comparable judicial record' revealing the 'factual basis for the plea.'" *Diaz-Ibarra*, 522 F.3d at 348 (quoting *Shepard*, 544 U.S. at 26). Also under the modified categorical approach, in order to count a defendant's prior offense as a crime of violence for purposes of setting his base offense level at 20, pursuant to USSG § 2K2.1(a)(4)(A), these materials must *necessarily* show (plausibility or even likelihood is insufficient) that the defendant pleaded guilty to generic conduct that would constitute a crime of violence under USSG § 4B1.2(a)'s Otherwise Clause.[2] *See Bethea*, 603 F.3d at 259-60 & 259 n.7.

Finally, of specific relevance to the present appeal, in *Chambers v. United States*, 129 S. Ct. 687 (2009), the

---

[2]Although the government consistently espoused in its appellate briefing that the modified categorical approach applied in this case, and that, under such approach, "the next question is whether the defendant's 'charging documents and any judicial records 'necessarily' show that [the defendant] pled guilty to generic conduct that would constitute a [crime of violence],'" (government's Supplemental Br. at 8) (quoting *Bethea*, 603 F.3d at 259) (alterations in original), at oral argument, the government abruptly changed course and offered its newly minted argument that the modified categorical approach's must-necessarily-show requirement, as expounded upon by this court in *Bethea*, 603 F.3d at 259-60, is inapplicable when analyzing whether a defendant is guilty of a crime of violence under USSG § 4B1.2(a), because a defendant's advisory sentencing range under the Guidelines does not have constitutional implications. We hold the government's newly minted argument, made for the first time at oral argument, is waived in this appeal. This is because, although we gave the government the opportunity to make this very argument in its supplemental brief addressing the impact of our recent decision in *Bethea*, 603 F.3d at 254, on the present appeal, the government unequivocally failed to avail itself of such opportunity. *See United States v. Leeson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006) (argument based upon particular Supreme Court case made for the first time in a letter styled as notice of supplemental authority, submitted pursuant to Federal Rule of Appellate Procedure 28(j), was waived on appeal; appellant did not present argument based upon the Supreme Court case in the argument section of its opening brief and such case was readily available at the time appellant filed his opening brief).

Supreme Court held that the generic crime of failing to report to a penal institution did not fall within the scope of the ACCA's Otherwise Clause. *Id.* at 691-92. The Court reasoned that, "[c]onceptually speaking, the crime amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." *Id.* at 692 (internal quotation marks omitted).

Here, with the exception by the government previously noted, *see supra* at 12 n.2, and an alternative argument by Clay which we find unnecessary to reach, *see infra* at 18 n. 4, the parties agree that the modified categorical approach, not the categorical approach, is applicable, because Georgia's felony escape statute criminalizes at least two generic classes of conduct: (1) traditional break-out escape from a secured facility, which the parties unremarkably agree involves conduct that presents a serious potential risk of physical injury to another, *see*, *e.g.*, *United States v. Pratt*, 568 F.3d 11, 22 (1st Cir. 2009); and (2) failure to return to custody, which the parties rightly agree under the Supreme Court's decision in *Chambers*, 129 S. Ct. at 691-92, does not. *See also Bethea*, 603 F.3d at 258 ("Because it is clear that the term 'to escape' broadly encompasses at least two generic classes of conduct under South Carolina law, including failure to report, *Chambers* requires us to use the modified-categorical approach to determine whether the defendant's conduct was generically violent."). The parties also rightly agree that Georgia's felony escape statute criminalizes a third generic class of conduct, *i.e.* walk-away escape from an unsecured facility. *See Truax v. State*, 428 S.E.2d 611, 613 (Ga. Ct. App. 1993) (holding evidence sufficient to support felony escape conviction under Ga. Code § 16-10-52(a), where defendant was brought to police department for the purpose of investigating a theft offense, told to wait, and walked out without permission when left unattended); *Hornsby v. State*, 284 S.E.2d 630, 631 (Ga. Ct. App. 1981) (holding, under predecessor version of Ga.

Code § 16-10-52(a), that prisoner who was admitted to hospital for treatment of back pains and accompanied to hospital room by police officer, but then left unguarded, could be convicted of felony escape when he walked away from hospital without permission before his sentence had expired). Finally, the parties agree that walk-away escape from an unsecured facility does not qualify as a crime of violence within the scope of USSG § 4B1.2(a)(2)'s Otherwise Clause.

Despite all their points of agreement, at least throughout the entirety of their respective briefing in this appeal, Clay and the government parted company on the issue of whether, under the modified categorical approach, the Charging Document and the Guilty Plea/Judgment Documents necessarily show (as opposed to just being plausible or even likely) that Clay had pled guilty to traditional break-out escape from a secured facility as opposed to walk-away escape from an unsecured facility. *Bethea*, 603 F.3d at 259. In all of his appellate briefing, Clay argued that, at most, the Charging Document and the Guilty Plea/Judgment Documents show that he committed walk-away escape from an unsecured facility. Clay adhered to this argument at oral argument. In all of its appellate briefing, the government argued that the language in the Charging Document and the Guilty Plea/Judgment Documents necessarily show that Clay had pled guilty to traditional break-out escape from a secured facility as opposed to walk-away escape from an unsecured facility. In this regard, the government reasoned that Clay's plea of guilty to interference with government property under Georgia law, when read in combination with the language charging him with felony escape under Georgia law, conclusively established that he was shackled in leg irons at the time of his escape from the Gainesville State Diversion Center, and therefore, committed the generic crime of break-out escape from a secured facility (secured at least with respect to Clay). At oral argument, the government again abruptly changed course from its appellate briefing and candidly conceded that

"there is an inference that has to be drawn to establish that, at the time he escaped, he was wearing leg irons."

Before addressing the penultimate issue in the present appeal, *i.e.*, whether the Charging Document and the Guilty Plea/Judgment Documents necessarily show that Clay committed the generic crime of traditional break-out escape from a secured facility, we must address whether walk-away escape from an unsecured facility constitutes a qualifying crime of violence under USSG § 4B1.2(a)(2)'s Otherwise Clause, which is an issue of first impression in our circuit. In *Bethea*, we left open the analogous issue under the ACCA's Otherwise Clause. *Bethea*, 603 F.3d at 258-59. Because the South Carolina escape statute at issue in *Bethea* penalized failing to return to custody and the relevant documents to be considered under the modified categorical approach in *Bethea* did not conclusively rule out the possibility that the defendant had violated South Carolina's escape statute by failing to return to custody, we did not need to decide whether the generic crime of walk-away escape from an unsecured facility qualified as a violent felony under the ACCA's Otherwise Clause in order to resolve the appeal. *Bethea*, 603 F.3d at 258-60.

In contrast to the defendant in *Bethea*, Clay does not contend that the Charging Document and Guilty Plea/Judgment Documents fail to conclusively rule out the possibility that he violated Georgia's felony escape statute by failing to return to custody. This approach is unsurprising given two facts: (1) Georgia's felony escape statute expressly distinguishes between various forms of escaping from lawful custody or lawful confinement, Ga. Code § 16-10-52(a)(1)-(4), and "[i]ntentionally fail[ing] to return as instructed to lawful custody or lawful confinement or to any residential facility operated by the Georgia Department of Corrections after having been released on the condition that he or she will so return . . . ," Ga. Code § 16-10-52(a)(5); and (2) the language in the Charging Document tracked the language of subsection (a)(4) of Georgia's felony escape statute, which subsection provides

that "[a] person commits the offense of escape when he or she . . . [b]eing in lawful custody or lawful confinement prior to adjudication, intentionally escapes from such custody or confinement . . . ," Ga. Code § 16-10-52(a)(4).

Post *Chambers*, five of our sister circuits have held, in published opinions, that walk-away escape from an unsecured facility is a distinct form of generic conduct that does not involve purposeful, violent, and aggressive conduct that is "roughly similar, in kind as well as in degree of risk posed," *Begay*, 553 U.S. at 143, to the enumerated crimes of burglary of a dwelling, arson, extortion, or crimes involving the use of explosives, and therefore, does not fall within the Otherwise Clause of, in some cases the ACCA, in others USSG § 4B1.2(a). *See United States v. Lee*, 586 F.3d 859, 869 (11th Cir. 2009) (ACCA); *United States v. Hopkins*, 577 F.3d 507, 514-15 (3d Cir. 2009) (USSG § 4B1.2(a)); *United States v. Hart*, 578 F.3d 674, 678 (7th Cir. 2009) (USSG § 4B1.2(a)); *United States v. Ford*, 560 F.3d 420, 423-26 (6th Cir. 2009) (USSG § 4B1.2(a)); *United States v. Charles*, 576 F.3d 1060, 1068-69 (10th Cir. 2009) (USSG § 4B1.2(a)). *See also United States v. Parks*, 620 F.3d 911, 912, 916 (8th Cir. September 7, 2010) (recognizing that Eighth Circuit has not yet determined whether a walk-away escape from an unsecured facility qualifies as a crime of violence under USSG § 4B1.2(a)(2) in light of *Chambers* and *Begay*). Common to each of these decisions is the rationale that a walk-away escape from an unsecured facility, in the words of the Eleventh Circuit in *Lee*, quoting in part the words of the Sixth Circuit in *Ford*, "[u]nlike the prototypical escape scenario in which an individual must overcome physical barriers, a walkaway escape involves simply 'leav[ing] a facility without removing a physical restraint, without breaking a lock on a door, without climbing over a prison wall or security fence or without otherwise breaking through any other form of security designed to keep them put.'" *Lee*, 586 F.3d at 870 (quoting *Ford*, 560 F.3d at 424) (second alteration in original). Moreover, "an individual who simply walks away from custody was just as

unlikely as an individual who fails to report to custody to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct." *Lee*, 586 F.3d 870-71 (internal quotation marks omitted).

We agree with the rationale of our sister circuits, and thus hold that the generic crime of walk-away escape from an unsecured facility does not qualify as a crime of violence under USSG § 4B1.2(a)'s Otherwise Clause. Analogous to the Supreme Court's reasoning in *Chambers* that a defendant's failure to report to custody (or failure to return to custody) is "a far cry" from the type of conduct associated with the enumerated crimes in the ACCA's Otherwise Clause, *Chambers*, 129 S. Ct. at 692, a walk-away escape from an unsecured facility is a far cry from the type of conduct associated with the enumerated crimes in § 4B1.2(a)'s Otherwise Clause.

Moving on to the issue of whether the Charging Document and Guilty Plea/Judgment Documents necessarily show that Clay was convicted of the generic crime of break-out escape as opposed to the generic crime of walk-away escape from an unsecured facility, we hold they do not. Critically, the Charging Document and Guilty Plea/Judgment Documents left room for the possibility that Clay was convicted of the generic crime of walk-away escape from an unsecured facility, and therefore, make it possible that he engaged in patently non-violent conduct.[3] *Cf. Bethea*, 603 F.3d at 261 ("[b]ecause a defendant 'escapes' under South Carolina law by either breaking out or failing to report", the fact that the only documents related to the defendant's escape conviction that the court could properly consider (the indictment and sentencing sheet) stated that defendant had escaped "ma[de] it possible that Bethea engaged in patently non-violent conduct"). The fact that Clay unlawfully damaged leg irons at some point during

---

[3]Notably, the government concedes in its briefing that "a diversion center is akin to a half-way house . . . ." (government's Supplemental Br. at 8).

the same day he violated Georgia's felony escape statute by "escap[ing] from a place of lawful custody and confinement: to wit, the Gainesville State Diversion Center," (J.A. 169), which the government concedes is a half-way house, does not *necessarily* show, as the government righty conceded at oral argument, that he pled guilty to break-out escape from a secured facility as opposed to walk-away escape from an unsecured facility. Indeed, it does not necessarily show that he was ever actually restrained by the leg irons. Equally plausible is the scenario that Clay walked away without restraint from the Gainesville State Diversion Center, was captured later the same day, and then placed in leg irons which he damaged. Because the Charging Document and the Guilty Plea/Judgment Documents left room for the possibility that Clay was convicted of the generic crime of walk-away escape from an unsecured facility, Clay's felony escape conviction under Georgia law does not qualify as a crime of violence under USSG § 4B1.2(a). In sum, we hold the district court erred in counting Clay's escape conviction under Georgia law as a crime of violence for purposes of setting his base offense level at 20 under USSG § 2K2.1(a)(4)(A), and therefore, erred in calculating his advisory sentencing range under the Guidelines. Improper calculation of Clay's advisory sentencing range under the Guidelines constitutes significant procedural error, making Clay's sentence procedurally unreasonable. *Gall*, 552 U.S. at 51. Accordingly, we vacate Clay's sentence and remand this case for resentencing consistent with our holdings on this issue and further instructions that follow in the next part of this opinion.[4]

---

[4]We need not and do not address Clay's alternative argument, based upon *Johnson v. United States*, 130 S. Ct. 1265 (2010), that the modified categorical approach applies *only* "[w]hen the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes," and *only* to "determine which statutory phrase was the basis for the conviction . . . ." *Id.* at 1273.

III.

Because the district court erred in setting Clay's base offense level at 20 under USSG § 2K2.1(a)(4)(A), we instruct the district court on remand to revisit whether, pursuant to USSG § 2K2.1(b)(2), Clay was entitled to have his offense level reduced to level 6 for § 922(g) defendants who "possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition," USSG § 2K2.1(b)(2). In so revisiting, we instruct the district court to be mindful that a defendant convicted of being a felon in possession of a firearm is not automatically ineligible for the lawful sporting purposes reduction because such defendant cannot legally possess a firearm or obtain a hunting license and/or because he knew of these facts. *See United States v. Sura*, 511 F.3d 654, 663 (7th Cir. 2007) (advising sentencing court that, on remand for resentencing, it should not consider the fact that defendant had been warned that as a convicted felon he could not possess a firearm in determining whether to give offense level reduction under USSG § 2K2.1(b)(2) for possession of a firearm solely for lawful sporting purposes). The focus of the reduction is whether the defendant possessed the firearm solely for otherwise lawful sporting purposes (*e.g.* hunting) or whether he possessed it for an otherwise unlawful purpose such as protecting a stash of illegal drugs.

We also remind the district court to comply fully with the chosen-sentence explanation requirements set forth in *United States v. Carter*, 564 F.3d 325 (4th Cir. 2009). *Id.* at 328 (district court commits procedural error in sentencing defendant if it does not state in open court particular reasons supporting its chosen sentence sufficient to permit meaningful appellate review).

IV.

In conclusion, we hold the district court erred in calculating Clay's advisory sentencing range under the Guidelines by

counting Clay's conviction for felony escape under Georgia law as a "crime of violence" under USSG § 2K2.1(a)(4)(A), as the term "crime of violence" is defined by USSG § 4B1.2(a). Accordingly, we vacate Clay's sentence and remand for resentencing consistent with this opinion.

*VACATED AND REMANDED*